# Richmond

EMMETT LEE MEADE v. BLUMIE (MRS. JOSEPH) BELCHER.

NOEL M. WALKER, JR. v. BLUMIE (MRS. JOSEPH) BELCHER.

April 24, 1972.

Record Nos. 7663 and 7664.

Present, All the Justices.

*Francis W. Flannagan* (*Woodward, Miles & Flannagan*, on brief), for plaintiff in error in Record No. 7663.

*Wm. W. Eskridge* (*Penn, Stuart & Eskridge*, on brief), for plaintiff in error in Record No. 7664.

*M. Crockett Hughes, Jr.*, for defendant in error in Record Nos. 7663 and 7664.

CARRICO, J., delivered the opinion of the court.

The plaintiff, Blumie Belcher, was awarded a jury verdict in the sum of $100,000.00 against the defendants, Emmett L. Meade and Noel M. Walker, Jr., for personal injuries allegedly sustained in an automobile accident. Final judgment was entered on the verdict, and the defendants were granted writs of error.

The difficult questions on appeal involve the medical aspect of the case, *i.e.*, whether the accident caused the later amputation of Mrs. Belcher's right leg and whether an old X ray taken of Mrs. Belcher should have been admitted into evidence. There are, however, two preliminary questions concerning the negligence of Meade and Walker which may be disposed of without extensive discussion. These questions do not involve the sufficiency of the evidence relating to negligence, so a detailed statement of how the accident occurred is unnecessary.

The evidence against Walker showed that he attempted to pass a truck on a hill when the oncoming taxicab of Meade was too close. The vehicles of Walker and Meade almost collided. Meade's cab ran off the road, swerved back onto the highway, and struck Mrs. Belcher's vehicle, which was in a line of traffic behind the truck. The evidence against Meade was that he was operating at an excessive rate of speed.

## I. Walker's Negligence

The question involved in this part of the case concerns two instructions granted by the trial court, one at the request of Mrs. Belcher and the other at the request of Meade. In identical language, the jury was told in the two instructions that Walker was guilty of negligence if he undertook to pass "the vehicle ahead of him" when it was reasonably apparent that he could not pass in safety. The instruction granted Mrs. Belcher went on to say that if Walker's negligence was *a* proximate cause of the collision between the Meade and Belcher vehicles, then the jury should find in favor of Mrs.

Belcher against Walker. The instruction granted Meade concluded with the proposition that if Walker's negligence was the *sole* proximate cause of the collision, then the jury should find in favor of Mrs. Belcher against Walker, but in favor of Meade.

Walker argues that the trial court, by "granting repetitious instructions directed against him," overemphasized that he may have been negligent and suggested to the jury that "the Court felt that he was." This, Walker says, requires reversal.

We do not agree. Mrs. Belcher was entitled to have the jury instructed on her theory that if the negligence of Walker was *a* proximate cause of the collision, she was entitled to recover from him. And Meade was entitled to his theory that if Walker's negligence was the *sole* proximate cause of the collision, then he, Meade, was not liable. It would have been simple, and better, to have included the two theories in one instruction. But the use of two instructions, if error, was not reversible error. So Walker is not entitled to a new trial on the question of his negligence.

## II. Meade's Negligence

■ The evidence showed that on the date of the accident, Meade, accompanied by a friend, Ed Richardson, transported a fare-paying passenger from Tazewell, Virginia, to Bluefield, West Virginia. Meade took the passenger, at the latter's request, to a liquor store in Bluefield, where the passenger made a purchase. The passenger then was left at his destination near Bluefield, and on the return trip to Tazewell, Meade was involved in the accident in question.

When Richardson was on the witness stand and under cross-examination by Mrs. Belcher's counsel, he was asked, or rather the statement was made to him, with regard to the stop at the liquor store:

"And you loaded the back end of that car with liquor and that is the reason you were going so fast?"

Meade's counsel objected and moved for a mistrial. The objection was overruled and the motion denied. Richardson was then questioned about whether he had taken a drink and about "how much liquor" he had purchased. He denied having had anything to drink and having bought any whiskey.

We think the question, or the statement, of Mrs. Belcher's counsel and the trial court's tacit approval thereof constituted prejudicial

error to Meade. There was no evidence that Meade had had anything to drink at the time of the accident or that there was any liquor in his taxicab. His speed was the crucial issue with respect to his liability. The statement implied that he was engaged in the illegal transportation of liquor and that he was speeding at the time of the accident to escape apprehension. This injected an inflammatory and unfair factor into the case and tended to divert the jury's attention from the real issue. So Meade is entitled to a new trial upon the issue of his negligence.

### III. The Medical Aspect of the Case

A. Admission of opinion evidence that the accident caused the loss of Mrs. Belcher's leg

■ We have noted that Mrs. Belcher suffered the amputation of her right leg following the accident. As is stated in Walker's brief, and Meade concurs, the "obvious crucial question in the trial of the case was whether the loss of [Mrs. Belcher's] leg resulted from the accident." It is with the question of causal connection that we now concern ourselves.

The accident occurred on October 4, 1968. Mrs. Belcher's leg was amputated sometime between February 2 and March 24, 1969. However, Mrs. Belcher had experienced difficulty with the circulation in her right leg for some time prior to the accident.

The evidence showed that on March 21, 1968, Mrs. Belcher was referred to Dr. James B. Thomas, a specialist in vascular surgery of Bluefield, West Virginia. She was referred by Dr. Howard Scott of the Clinch Valley Clinic, Richlands, Virginia, "because of problems of circulation of her right leg."

Dr. Thomas examined Mrs. Belcher and was of opinion that there was insufficient circulation in her right leg "because of some obstruction of circulation higher than the femoral artery." He recommended that she have an aortogram, consisting of a series of X rays taken after dye is injected into the blood vessels of a patient.

Mrs. Belcher was admitted to the hospital and the aortogram was made on April 10. From it, Dr. Thomas concluded that Mrs. Belcher was suffering from hardening of the arteries and that there was a "partial obstruction of the last portion of her main blood vessel, the abdominal aorta," through which passes the blood supply to the legs. He recommended a "bypass graft" operation, which consists

of the insertion of a "piece of plastic tubing" in the injured blood vessel above and below "the point of block."

Mrs. Belcher saw Dr. Thomas again on April 24, 1968, and he repeated his recommendation that she undergo the bypass operation. It was agreed that she would give him her decision in three weeks. She "did not come back."

After the accident on October 4, 1968, Mrs. Belcher was admitted to the Clinch Valley Clinic Hospital and was treated for one week by Dr. Scott. On October 11, she was referred to Dr. W. T. Henderson, an orthopedic surgeon, who was her only medical witness at trial. He found that she had a sprain of the neck and "two fairly mild compression fractures of the bodies of two of the lumbar vertebrae." She remained in the hospital until October 15, when she was discharged for home treatment. She was seen from time to time by Dr. Henderson during the next month and a half. She complained of pain in her neck, lower back, and lower extremities. On November 8, she was again hospitalized, and she was diagnosed as having an "occlusion of her abdominal aorta," which Dr. Henderson described as a "blockage by organized blood clot in the main artery in the lower part of the abdomen."

On November 22, 1968, Dr. Henderson had Mrs. Belcher admitted to Duke Medical Center, Durham, North Carolina. She remained there until December 18, and then returned home "convalescing from the multiple operations that she had had at Duke." She was seen by Dr. Henderson on February 2, 1969, and he found that her "right lower leg" was worse. He had her readmitted to Duke Medical Center, where she remained until March 24, 1969, when she was discharged and transferred to Clinch Valley Clinic Hospital. Upon her return from Duke, Mrs. Belcher's "right leg had been amputated through the thigh."

Dr. Henderson testified at trial that the compression fractures he found in Mrs. Belcher's spine had caused "further injury to the diseased artery that was lying adjacent to the damaged bones in her lower back." The doctor was permitted to state, over the objection of the defendants, that, in his opinion, the injuries suffered by Mrs. Belcher in the accident of October 4, 1968, caused the loss of her leg.

We have gone into some detail about Mrs. Belcher's medical history to point up the seriousness of the causation question in this case and the importance of Dr. Henderson's opinion testimony with respect to that question. The defendants contend that Dr. Hender-

son should not have been permitted to state his opinion, which was necessarily based upon evidence admittedly not in the record, that the loss of Mrs. Belcher's leg was caused by the accident. We agree.

Dr. Henderson was Mrs. Belcher's sole medical witness. He obviously relied very heavily on the records from Duke Medical Center to arrive at his opinion concerning the cause of the loss of Mrs. Belcher's leg. And yet, these records were never introduced into evidence. Therefore, Dr. Henderson should not have been permitted to base his opinion, wholly or partially, upon their contents. *Virginian Ry. Co.* v. *Andrews*, 118 Va. 482, 489-90, 87 S.E. 577, 580 (1916); *Wild* v. *Bass*, 252 Miss. 615, 628, 173 So.2d 647, 652 (1965). *See also Livingston* v. *Commonwealth*, 55 Va. (14 Gratt.) 592, 603 (1857). So both defendants are entitled to a new trial on the question whether the accident caused the loss of Mrs. Belcher's leg.

### B. Admissibility of the old X ray photograph of Mrs. Belcher

■ Dr. Thomas, who made the aortogram of Mrs. Belcher on April 10, 1968, was called as a witness by the defendants. Through him, they sought to introduce in evidence an X ray photograph allegedly taken of Mrs. Belcher in 1959 when she was in the Bluefield Clinic for treatment of a kidney stone. The defendants' purpose was to use the photograph to show that the condition of Mrs. Belcher's spine which caused her circulatory problems was "developmental," described as "juvenile epiphysitis," having had its onset when Mrs. Belcher was only ten or twelve years old.

The only identification of the X ray photograph came from the testimony of Dr. Thomas that he had found it in Mrs. Belcher's file at the Bluefield Clinic and that it bore her patient number. Dr. Thomas, who had no connection with Mrs. Belcher or the photograph when taken in 1959, stated that X ray photographs were destroyed at the Clinic after five years, and he had no explanation of how this particular photograph happened to be in Mrs. Belcher's file.

The court ruled the photograph inadmissible. Since the question of its admissibility will likely arise upon retrial of the case, we deem it necessary to settle the question now.

X ray photographs are admissible into evidence when properly authenticated. An X ray is properly authenticated when it is shown that it is of the person involved in the case, that it was made by a competent technician, and that it accurately portrays the condition of the person's body. *See, e.g., Branch* v. *Gurley*, 267 N.C. 44, 47-48,

147 S.E.2d 587, 590 (1966); *Texas General Indemnity Company* v. *Thomas*, 428 S.W.2d 463, 465 (Tex. Civ. App. 1968); *Travelers Insurance Company* v. *Williams*, 355 S.W.2d 728 (Tex. Civ. App. 1962). *See generally* Annot., 5 A.L.R.3d 303 (1966).

We think the trial court ruled correctly upon the admissibility of the photograph in this case. With the scanty identification offered by the defendants, too much was left to the chance that the photograph was not of Mrs. Belcher or that the technical skill required to produce an accurate picture was not employed. If no more is shown upon retrial, admission of the photograph should again be refused.

We have considered the other points of error set out in the briefs of the defendants and find them without merit.

The judgment of the trial court will be reversed and the case remanded for a new trial. With respect to the defendant Meade, the new trial will be upon all issues. With respect to the defendant Walker, the new trial will be limited to the question whether the accident of October 4, 1968, caused the loss of Mrs. Belcher's leg and to the amount of damages she is entitled to recover.

*Reversed and remanded.*