COURT OF APPEALS OF VIRGINIA

Present:    Judges Kelsey, Haley and Powell
Argued at Alexandria, Virginia


TAMMY JEAN QUESENBERRY

                                                        MEMORANDUM OPINION* BY
v.         Record No. 2403-08-4                 JUDGE D. ARTHUR KELSEY
                                                           DECEMBER 8, 2009
COMMONWEALTH OF VIRGINIA


                  FROM THE CIRCUIT COURT OF MONTGOMERY COUNTY
                               Robert M.D. Turk, Judge

               Victor Bongard III (Albright & Bongard, PLC, on briefs), for
               appellant.

               Craig W. Stallard, Assistant Attorney General (William C.
               Mims, Attorney General, on brief), for appellee.


        The trial court found Tammy Jean Quesenberry guilty of attempting to fraudulently

obtain a controlled substance in violation of Code § 18.2-258.1(A)(i).  On appeal, Quesenberry

challenges the trial court's admission of expert testimony as well as the court's failure to strike

the evidence as insufficient.  Finding no merit in either assertion, we affirm.

                                             I.

        On appeal, we review the evidence in the "light most favorable" to the Commonwealth.

Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003).  Viewing the record

through this evidentiary prism requires us to "discard the evidence of the accused in conflict with

that of the Commonwealth, and regard as true all the credible evidence favorable to the

Commonwealth and all fair inferences to be drawn therefrom."  Parks v. Commonwealth, 221

Va. 492, 498, 270 S.E.2d 755, 759 (1980) (emphasis and citation omitted).  Our examination of

the record, moreover, "is not limited to the evidence mentioned by a party in trial argument or by

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

the trial court in its ruling." Bolden v. Commonwealth, 275 Va. 144, 147, 654 S.E.2d 584, 586 (2008), aff'g, 49 Va. App. 285, 640 S.E.2d 526 (2007).

Complaining of abdominal pain, Quesenberry visited the emergency room of Montgomery Regional Hospital and requested Oxycodone, a prescription-only, opiate pain reliever.[1]  She specifically needed Oxycodone, Quesenberry claimed, because she had been diagnosed with bladder cancer and had been taking the drug for nine years.  Andrew A. Galvin, a nurse practitioner and clinical nurse specialist with twenty-one years of experience in emergency medicine, explained that a physical evaluation was required before she could be given any prescribed medication.  As part of the process, Galvin reviewed available medical records and contacted two of Quesenberry's doctors, but could not confirm her claimed diagnosis.

Galvin told Quesenberry she would need to provide a urine sample for a urinalysis to help determine the cause of her pain.  In response, Quesenberry said she would take the sample herself because she had learned how to perform self-catheterizations due to her medical problems.  A few minutes later, Quesenberry offered a urine sample she obtained privately and without assistance.  Galvin noticed the urine sample was colder than room temperature. Suspicious, Galvin directed an emergency room attendant to take a second sample.  Both samples were then tested in the hospital laboratory.  After Galvin reviewed the results, he concluded the samples were wholly dissimilar and "obviously from different people."

Galvin offered Quesenberry a non-narcotic alternative for her symptoms.  Quesenberry refused the offer, pulled out her IV, and walked out of the examination room complaining that she was being treated "like shit."  She then called 911 stating "she was going to kill herself" if she was not transferred to another hospital.  Quesenberry left the hospital before police arrived.

---

[1] "'Opiate' means any substance having an addiction-forming or addiction-sustaining liability similar to morphine or being capable of conversion into a drug having such addiction-forming or addiction-sustaining liability."  Code § 54.1-3401.

A grand jury indicted Quesenberry for attempting to fraudulently obtain a controlled substance in violation of Code § 18.2-258.1(A)(i).  At trial, Galvin testified that the "remarkably different results on their dipstick analys[es] and their microscopic contents" showed that the two urine samples "were obviously from different people."  Quesenberry's counsel objected "as to the conclusion" offered by Galvin.  "I don't see the foundation yet for his opinion testimony about the urine samples," counsel argued.  In reply, the prosecutor pointed out that Galvin "testified that the makeup of [the two samples] was different and his conclusion as a nurse practitioner was that they came from two different people."  Quesenberry's counsel responded, "I don't think that qualifies him as an expert in the chemical makeup and so forth of the urinalysis."  The trial court overruled the objection after confirming that Galvin was personally involved in the treatment of Quesenberry.[2]

Quesenberry took the stand in her own defense.  She claimed to have been diagnosed with bladder cancer and interstitial cystitis necessitating narcotic pain medication.  She produced no medical reports or physician testimony, however, to corroborate her testimony.  Quesenberry also denied providing a false urine sample to Galvin.  She admitted she asked for Lortab, a narcotic pain reliever containing hydrocodone, and "could have" also requested Oxycodone, but denied that Galvin offered her any non-narcotic alternatives to relieve her pain.  Rejecting Quesenberry's testimony, the trial court found her guilty as charged and sentenced her to a three-year suspended prison term and two years supervised release.

---

[2] Later during the cross-examination of Galvin, Quesenberry's counsel objected to Galvin's *earlier* testimony on the ground that "he wasn't present at the time that particular test was performed."  The trial court, however, did not rule on the objection.  Consequently, "there is no ruling for us to review on appeal."  Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 489 (1998) (citing Fisher v. Commonwealth, 16 Va. App. 447, 454, 431 S.E.2d 886, 890 (1993)); see also Riner v. Commonwealth, 268 Va. 296, 323-25, 601 S.E.2d 555, 571-72 (2004); Taylor v. Commonwealth, 208 Va. 316, 324, 157 S.E.2d 185, 191 (1967) (applying waiver rule to evidentiary objection not ruled upon by the trial court).

II.

On appeal, Quesenberry challenges the admissibility of Galvin's testimony about the dissimilar urine samples and argues that, absent this testimony, the remaining evidence is insufficient to convict her.

### A. GALVIN'S TESTIMONY ABOUT THE DISSIMILAR URINE SAMPLES

Quesenberry contends the trial court erred by admitting Galvin's testimony about the urine samples because (i) he was not "qualified as an expert witness" and thus, his testimony was "inadmissible hearsay," Appellant's Br. at 7, and (ii) "even if Mr. Galvin had been qualified as an expert," his testimony "lacked proper foundation" due to the absence of any "evidence regarding urinalysis testing, reliability or safeguard and quality assurance procedures," id. at 9.

Quesenberry's arguments on appeal vary in subtle but important ways from her arguments at trial. At trial, Quesenberry challenged Galvin's qualifications to offer his opinion that the dissimilar samples came from different donors. At no point, however, did Quesenberry claim Galvin's testimony constituted "inadmissible hearsay"[3] or assert that the trial court never formally "qualified" Galvin as an expert. See Appellant's Br. at 9. Nor did Quesenberry argue that Galvin needed to establish the "testing, reliability or safeguard and quality assurance procedures" before offering his opinion. Id.

---

[3] Quesenberry's counsel asserted hearsay objections on three occasions during the trial. The first involved an objection to Galvin repeating the statements Quesenberry made to medical personnel while in the emergency room. The second objection was made when Galvin stated the drug screening found Quesenberry positive for "opiates, tricyclic antidepressants and cannabis." The third was an objection to the testimony of a police officer. None of these objections addressed Galvin's testimony that the dissimilar urine samples came from different donors. "A general argument or an abstract reference to the law is not sufficient to preserve an issue." Edwards v. Commonwealth, 41 Va. App. 752, 760, 589 S.E.2d 444, 448 (2003) (*en banc*) (citing Buck v. Commonwealth, 247 Va. 449, 452-53, 443 S.E.2d 414, 416 (1994)), aff'd by unpublished order, No. 040019 (Va. Oct. 15, 2004).

On appeal, we address only specific objections raised contemporaneously with the challenged evidence and the court's ruling. Under Rule 5A:18, the "*same* argument must have been raised, with *specificity*, at trial before it can be considered on appeal." Smith v. Commonwealth, 48 Va. App. 521, 530 n.1, 633 S.E.2d 188, 193 n.1 (2006) (emphasis added and citation omitted).[4] With respect to Galvin's different-donors opinion, the only objections Quesenberry raised at trial challenged the foundation of Galvin's opinion and his qualifications as an expert to give it. The specific opinion being challenged, moreover, did not involve any recitation by Galvin of the precise chemical properties of either of the two samples. Galvin said the samples were "remarkably different" and "were obviously from different people."

Given the narrow scope of Galvin's testimony, the evidence before the court sufficiently established his expert qualifications. Galvin personally treated Quesenberry in the emergency room. Galvin was licensed as a nurse practitioner[5] and clinical nurse specialist with twenty-one years of experience. In that capacity, he was qualified to determine whether lab reports recording wholly dissimilar urine samples belonged to dissimilar donors.

In Virginia, "all that is necessary for a witness to qualify as an expert is that the witness have sufficient knowledge of the subject to give value to the witness's opinion." Velazquez v. Commonwealth, 263 Va. 95, 103, 557 S.E.2d 213, 218 (2002) (citation omitted) (holding that a Sexual Assault Nurse Examiner was qualified to testify as an expert in sexual assault cases). See

---

[4] "Although Rule 5A:18 allows exceptions for good cause or to meet the ends of justice, appellant does not argue that we should invoke these exceptions." Edwards, 41 Va. App. at 761, 589 S.E.2d at 448. "We will not consider such an argument *sua sponte*." Id.; see also Widdifield v. Commonwealth, 43 Va. App. 559, 563, 600 S.E.2d 159, 162 (2004) (*en banc*).

[5] Under Virginia law, nurse practitioners have "prescriptive authority," Code § 54.1-2957.01(A), and may "engage in practices constituting the practice of medicine in collaboration with and under the medical direction and supervision of a licensed physician." 18 Va. Admin. Code § 90-30-120(A). Nurse practitioners are licensed by both the Virginia Board of Nursing and the Virginia Board of Medicine. Code § 54.1-2957. "[W]henever any law or

also Fitzgerald v. Commonwealth, 273 Va. 596, 603, 643 S.E.2d 162, 165 (2007) (finding a licensed professional counselor qualified to diagnose recognized mental disorders); Conley v. Commonwealth, 273 Va. 554, 562, 643 S.E.2d 131, 135 (2007) (agreeing that a licensed clinical social worker could testify as an expert on mental disorders). We rely on the trial court's "sound discretion" to make such determinations, Mohajer v. Commonwealth, 40 Va. App. 312, 320, 579 S.E.2d 359, 363 (2003) (*en banc*), and reverse only when "it plainly appears that the witness was not qualified," Conley, 273 Va. at 560, 643 S.E.2d at 134. Governed by this standard of review, we hold the trial court did not abuse its discretion in finding Galvin qualified to give his dissimilar-donors opinion.

We also find no merit in Quesenberry's suggestion that the Commonwealth did not lay a proper foundation to render Galvin's opinion admissible. As the attending medical professional, Galvin was responsible for the two urine samples obtained from Quesenberry and personally reviewed the results from the hospital lab.[6] Galvin offered a limited opinion, concluding only that the "remarkably different" samples came from different donors. Galvin did not attempt to introduce into evidence either the reports themselves or any hearsay from other medical professionals. See, e.g., Cartera v. Commonwealth, 219 Va. 516, 519, 248 S.E.2d 784, 786 (1978) (holding that a medical professional may "state what examinations and tests he performed" and then explain the "medical conclusions he reached as a result").

Whether an expert's opinion rests on an adequate factual foundation involves a judgment call within the trial court's sound discretion. See Payne v. Commonwealth, 277 Va. 531, 543,

---

regulation requires a signature . . . by a physician, it shall be deemed to include a signature . . . by a nurse practitioner." Code § 54.1-2957.02.

[6] Quesenberry also contends Galvin should not have been permitted to offer an opinion regarding the "results of the urinalysis tests" because the results were not admitted into evidence. Appellant's Br. at 9. However, "an expert may give an opinion based upon his *own knowledge* of facts" disclosed through his testimony. Jones v. Commonwealth, 54 Va. App. 219, 225, 677 S.E.2d 61, 64 (2009) (emphasis added).

674 S.E.2d 835, 841 (2009). Under the abuse-of-discretion standard, we do not review the issue *de novo* or "substitute our judgment for that of the trial court." <u>Grattan v. Commonwealth</u>, 278 Va. ___, ___, 682 S.E.2d ___, ___ (Nov. 5, 2009) (citation omitted). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." <u>Id.</u> (quoting in parenthetical from <u>Tynes v. Commonwealth</u>, 49 Va. App. 17, 21, 635 S.E.2d 688, 689 (2006)). Quesenberry's challenge to the trial court's ruling on foundation falls far short of demonstrating an abuse of discretion.

### B. Sufficiency of the Evidence

Quesenberry frames her attack on the sufficiency of the evidence upon the assumption the trial court erred in allowing Galvin to offer his dissimilar-donors opinion. <u>See</u> Appellant's Br. at 9-10. Because this sufficiency challenge rests on a premise we reject, the sufficiency issue need not be examined further. <u>See</u> <u>Sprouse v. Commonwealth</u>, 53 Va. App. 488, 493, 673 S.E.2d 481, 483 (2009).

### III.

Finding no error in the trial court's evidentiary rulings or insufficiency in the evidence, we affirm Quesenberry's conviction for attempting to fraudulently obtain a controlled substance in violation of Code § 18.2-258.1(A)(i).

<u>Affirmed.</u>