COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Felton, Judge Alston and Senior Judge Annunziata
Argued at Salem, Virginia


JUAN LUIS LEBRON

                                                              OPINION BY
v.      Record No. 1405-10-3          CHIEF JUDGE WALTER S. FELTON, JR.
                                                              JULY 19, 2011
COMMONWEALTH OF VIRGINIA


               FROM THE CIRCUIT COURT OF ROCKBRIDGE COUNTY
                              Michael S. Irvine, Judge

               (Joshua O. Elrod; Mann, Vita, and Elrod, P.L.L.C., on brief), for
               appellant.  Appellant submitting on brief.

               Karen Misbach, Assistant Attorney General (Kenneth T. Cuccinelli,
               II, Attorney General, on brief), for appellee.


       Following a joint bench trial with Matthew Antonio Salcedo, Juan Luis Lebron

("appellant") was convicted by the Circuit Court of Rockbridge County ("trial court"), as a

principal in the second degree, of robbery, in violation of Code § 18.2-58, and use of a firearm in

the commission of robbery, in violation of Code § 18.2-53.1.  Appellant was also convicted, as a

principal in the second degree, of participating in a criminal act for the benefit of a prohibited

street gang, in violation of Code § 18.2-46.2.  On appeal, appellant contends the evidence was

insufficient to convict him of any of these crimes.  He also contends the trial court improperly

considered evidence that was admitted only against Salcedo.  For the following reasons, we

affirm appellant's convictions.

                              I.  BACKGROUND

       "On appeal, we consider the evidence in the light most favorable to the Commonwealth,

the prevailing party in the [trial] court, and we accord the Commonwealth the benefit of all

reasonable inferences deducible from the evidence." Brown v. Commonwealth, 278 Va. 523, 527, 685 S.E.2d 43, 45 (2009). The evidence presented at trial proved the following. On August 16, 2009, appellant met Salcedo,[1] Damon Turner,[2] Leon Hunt, and Salcedo's girlfriend, Stephanie Jarmillo.[3] During the day, Jarmillo drove the group around in Salcedo's mother's van. They went to a convenience store in Rockbridge County several times throughout the day. Hunt was the only individual in the van with money. While they drove around in the van, the group discussed their need for money to buy marijuana. Hunt saw two handguns laying "[b]arrel to butt" in the front of the van, in between the driver's and front passenger's seats.[4] Prior to his leaving the group in the van around 9:30 p.m.,[5] Hunt heard Salcedo tell Turner to "man up."

On that same day, just prior to closing time at the convenience store, Sadie Claytor, a relative of the store's owner, was sitting on a bench outside the store. A man wearing clothing concealing his face ran up to her, put a gun to her face, and said, "this is a stick up." He then ran inside the store. Claytor immediately ran to a man in a nearby vehicle and asked him to call 911. As Claytor proceeded back toward the store, she saw the same masked man leave the store and

---

[1] Salcedo and appellant were convicted of identical crimes following a joint bench trial. Salcedo also appealed his convictions to this Court. See Salcedo v. Commonwealth, __ Va. App. __, __ S.E.2d __ (2011) (this day decided).

[2] Approximately two months after Salcedo and appellant were convicted, Turner, a juvenile, entered guilty pleas to robbery, use of a firearm in the commission of robbery, participation in a criminal act for the benefit of a criminal street gang, and assault and battery.

[3] Appellant, Salcedo, and Jarmillo lived together at Salcedo's mother's house.

[4] Virginia State Police Special Agent Eric Vega, qualified as an expert in criminal street gangs, testified that displaying firearms "[b]arrel to butt" forms a diamond pattern that "is representative of [the Latin Kings gang]."

[5] At some point during the evening, Jarmillo also went home after which appellant drove the van.

run through a field toward two individuals. She saw the masked man and the men in the field speak to each other, but could not hear what they were saying.

Eva Moore, an employee of the convenience store, testified that at approximately 11:00 p.m. that day, an armed man, with his face concealed by clothing, entered the store, put a gun to her head, and demanded money. That man took the cash drawer and a change bag, then quickly left the store.[6]

Rockbridge County Sheriff's Deputy Steve Funkhouser responded to the 911 call at the convenience store and found a trail of cash, receipts, checks made out to the convenience store, the store's bank bag, black gloves, and a BB gun. He found those items along the path where Claytor saw the masked man run from the store toward a nearby field. Funkhouser also found a blue shirt, a red shirt, and additional receipts from the convenience store scattered along Route 130.[7] Turner's DNA was found on the black gloves.

The surveillance videotape from the convenience store showed the following:

- At 5:40 p.m., a van belonging to Salcedo's mother entered the parking lot of the store. Appellant, Salcedo, and Turner entered the store. The three men left the store.

- At 6:48 p.m., appellant and Turner re-entered the store.

- At 9:20 p.m., appellant, Salcedo, and Turner re-entered the store.

- At 10:42 p.m., Salcedo's mother's van was parked at the rear of the store.

- At 10:49 p.m., Salcedo again entered the store.

- At 11:03 p.m., a person with clothing concealing his face, meeting Turner's height and physical characteristics, armed with a

---

[6] A video surveillance camera recorded the robbery.

[7] Route 130 is a roadway running through the town of Glasgow, where the convenience store was located, and Natural Bridge, where Salcedo resided with his mother.

firearm, entered the convenience store, placed a gun to the head of
the cashier, and took the cash register drawer.

Salcedo's mother's van was not in the store's parking lot at the time the robbery occurred.

On August 17, 2009, the day following the robbery, Hunt, who had been in the van the day before, called the sheriff's department after hearing about the robbery at the convenience store. He told the officers that he had been with "Chino"[8] and "Blaze"[9] the day before and that they had BB guns, no money, and were riding around looking for marijuana.

During his investigation of the convenience store robbery, Investigator Funkhouser discovered an unrelated outstanding misdemeanor warrant for Salcedo charging possession of marijuana. He proceeded to Salcedo's mother's residence and there arrested Salcedo on the outstanding warrant. Officers arrested Turner later that day.

After speaking with Salcedo and Turner, officers arrested appellant. In an initial statement to the police, appellant denied knowledge of the robbery. In a later statement, appellant admitted he drove Salcedo's mother's van to the convenience store and parked it in an area away from the store's parking lot. In his statement, appellant stated that Turner left the van and walked away. A short time later, Turner ran back to the van with a shirt over his face. As appellant drove away, Turner discarded clothes out of the window of the van. Appellant admitted that he saw the guns inside the van.

Lieutenant Timothy Hickman, a Rockbridge County Sheriff's Deputy, searched Salcedo's mother's residence, pursuant to a search warrant. Hickman seized multiple gang-related items as well as seven computers belonging to Salcedo. He testified appellant had tattoos associated with the Latin Kings. Hickman described the colors, items, and tattoos

---

[8] Appellant's street name is "Chino."

[9] Salcedo's street name is "Blaze."

associated with the Latin Kings. Numerous photographs were found on Salcedo's computer depicting appellant, Salcedo, and others wearing gang colors, black and yellow "three-sixty" beads, and making Latin Kings hand gestures.

At trial, Virginia State Police Special Agent Eric Vega, qualified as an expert in criminal street gangs, testified as to the history of the Almighty Latin King and Queen Nation ("Latin Kings") and the structure of the gang. He told the trial court that the Latin Kings are known to engage in criminal activity, including money laundering and narcotics trafficking. The colors for the gang were black and gold or yellow, and the members wore black and yellow "three-sixty" beads as part of their uniform. Vega identified a color photograph, obtained during the search of Salcedo's mother's home, showing appellant wearing the black and yellow gang beads, wearing the colors for the gang, and giving a Latin Kings salute. Vega noted that the convenience store's surveillance tape showed appellant wearing gang beads when he was inside the convenience store during one of the group's earlier visits prior to the robbery.

Special Agent Vega testified that "tribes" in each state represent the national Latin Kings organization and that each state or tribe has an assigned "Inca." The "Inca" is the "top of the line, the boss," and "[the Inca's] orders are not to be questioned." The Inca "ensure[s] that the rules, regulations, [and] policies that they have within the structure are adhered to" and that punishment for failure to adhere to gang rules can result in "anything from monetary fines to physical discipline[,] up to and including death." Special Agent Vega testified that within the Latin Kings, the phrase "man up" challenges a person's bravado, and "means . . . that person has to come through with what they said they were going to do." When used by a high-ranking gang member, the phrase is "basically an order, you know, what you have to do, you've got to do it."

Jarmillo, Salcedo's girlfriend, testified appellant held himself out as a member of the Latin Kings, used gang signs, and wore gang beads. Dimitri Dunn, appellant's acquaintance, testified appellant wore the black and yellow "three-sixty" beads.

Turner testified as a defense witness for both appellant and Salcedo during the joint trial. He admitted he robbed the convenience store while armed with a BB gun. He told the trial court that appellant and Salcedo were not involved in the robbery and that Salcedo did not tell him to "man-up." He also testified that he was not a member of the Latin Kings and he could not remember whether he had ever seen appellant and Salcedo wearing black and yellow beads. Turner, who was a juvenile at the time of the robbery, had known Salcedo for six or seven years. Salcedo's mother and Turner's father had been friends before Turner's birth.

Dunn, Salcedo's friend of four years, testified that Turner wore black and yellow beads and used Latin Kings hand signs. Deputy Sheriff C.J. Blaylock identified a photograph taken at the time of Turner's arrest, depicting a tattoo of a crown on Turner's body.[10] Special Agent Vega testified that Turner had gang symbols on the jeans he wore to court for trial.

During his joint trial with appellant, Salcedo testified in his defense. Salcedo admitted that he was a member of the Latin Kings, that his title was King Ceazan, and that he was at one time the "Inca" for the Golden Crown Lion Tribe of Pennsylvania.[11] He also stated that appellant was on the Latin Kings council.[12] Salcedo admitted to the trial court that his first two statements to Investigator Funkhouser, denying any involvement in the robbery, were not accurate. In his third statement, Salcedo stated he, appellant, and Turner stopped at Turner's

_____

[10] Special Agent Vega testified that the specific crown tattoo on Turner's body was a symbol that had been adopted by the Latin Kings.

[11] Salcedo testified he was no longer the Inca in Pennsylvania because he resided in Virginia.

[12] The council is comprised of the top three ranking chapter officers with each tribe.

house and there Turner retrieved items of clothing that he later wore during the robbery. During its cross-examination of Salcedo, the Commonwealth asked questions regarding a gang roster. The trial court admitted as evidence a document containing names of Latin Kings members of the Golden Crown Lion Tribe. The trial court specifically asked appellant's attorney if he had any objection to the admission of the document into evidence. Appellant's attorney stated that he did not object to the exhibit's admission at the time the document was offered, and stated to the trial court:

> I had indicated, and maybe kind of prematurely but maybe, that I had rested my case. I did but really it was my intention to have Mr. Salcedo's testimony, which I knew was coming . . . to be part of [appellant's] case and so if the Court is receiving this as and offered as part of [appellant's] case *I'm happy to have all of Mr. Salcedo's testimony also in [appellant's] case but I just want to clarify that with the Court.*

(Emphasis added).

When it found appellant guilty, the trial court stated to appellant that:

> You were in the car when Mr. Turner went in the house and he got these clothes. He came back out. You were told evidently where to park. You all had been in this store previously and there had been discussion before about needing money and I believe that you, maybe earlier in the day you didn't think that, you didn't think that [robbery] was going to go that night but as it got close to that eleven o'clock hour and these preparations were being made I believe that circumstantial evidence does prove beyond a reasonable doubt that you were aiding and abetting by operating the vehicle, to parking in the place where it would not be seen or detected . . . and that you knew that Mr. Turner was going to then go rob the store and that he would return to that car and you would act as the getaway driver for that car.

Post-trial, appellant asked the trial court to reconsider his convictions of the charged offenses. He contended that the evidence that Turner retrieved items of clothing from his house, the clothing he wore during the robbery, was erroneously admitted into evidence through a written statement Salcedo gave to the police and that that statement was "introduced only in the

case of [Salcedo] . . . but not in [appellant's] case, as such a statement was hearsay for the purposes of [appellant's] trial, and that the [trial court] could not properly rely on this evidence to convict [appellant]." Following a hearing on appellant's motion, the trial court found that appellant had specifically adopted Salcedo's testimony as part of his evidence. It found that, even without Salcedo's statement, the evidence was sufficient to support appellant's convictions. The trial court also found that appellant admitted he had knowledge of the robbery, that he parked the van in a different location from the convenience store parking lot where he had parked earlier in the day when the group visited the store, and that appellant acknowledged that Turner ran back to the van with a shirt on his head.

## II. ANALYSIS

### A. Hearsay Testimony

On appeal, appellant contends the trial court improperly relied on inadmissible hearsay evidence in finding him guilty, as a principal in the second degree, of robbery, use of a firearm in the commission of robbery, and participation in a criminal act for the benefit of a criminal street gang. Appellant asserts that evidence relied on by the trial court to convict him came from a written statement that was introduced solely against his codefendant, Salcedo. Appellant specifically refers to that portion of the trial court's ruling when the trial court addressed him, stating, "[y]ou were in the car when Mr. Turner went in the house and he got those clothes. He came back out. . . ." See infra p. 7. Assuming without deciding that the trial court erred in considering Salcedo's written statements in appellant's case, we conclude any error was harmless.

Because Salcedo was available at trial, and was subject to cross-examination of his testimony, including his testimony about the statements he gave to police, the Confrontation Clause was not implicated. Accordingly, we apply the non-constitutional harmless error

analysis. See e.g., <u>Blackman v. Commonwealth</u>, 45 Va. App. 633, 644-45, 613 S.E.2d 460, 466 (2005) (assuming codefendant's hearsay statements to inmate admitted at joint trial were testimonial, admission of those statements did not violate <u>Crawford v. Washington</u>, 541 U.S. 36 (2004), where codefendant and inmate testified at trial). "[N]on-constitutional error is harmless 'when it *plainly appears* from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached.'" <u>Lavinder v. Commonwealth</u>, 12 Va. App. 1003, 1005-06, 407 S.E.2d 910, 911 (1991) (*en banc*) (quoting Code § 8.01-678). An error is harmless if "other evidence of guilt is 'so overwhelming and the error so insignificant by comparison that the error could not have affected the verdict.'" <u>Ferguson v. Commonwealth</u>, 16 Va. App. 9, 12, 427 S.E.2d 442, 444 (1993) (quoting <u>Hooker v. Commonwealth</u>, 14 Va. App. 454, 458 n.2, 418 S.E.2d 343, 345 n.2 (1992)). Furthermore, "'[a] judge, unlike a juror, is uniquely suited by training, experience and judicial discipline to disregard potentially prejudicial comments and to separate, during the mental process of adjudication, the admissible from the inadmissible, even though he has heard both.'" <u>Cole v. Commonwealth</u>, 16 Va. App. 113, 116, 428 S.E.2d 303, 305 (1993) (quoting <u>Eckhart v. Commonwealth</u>, 222 Va. 213, 216, 279 S.E.2d 155, 157 (1981)). "Consequently, we presume that a trial judge disregards prejudicial or inadmissible evidence." <u>Id.</u> "[T]his presumption will control in the absence of clear evidence to the contrary." <u>Hall v. Commonwealth</u>, 14 Va. App. 892, 902, 421 S.E.2d 455, 462 (1992) (*en banc*).

At the hearing on appellant's motion to reconsider its rulings and convictions, the trial court noted that appellant had adopted all of Salcedo's testimony, which included references to the written statements. Moreover, the trial court also stated that, considering all of the evidence presented in the joint trial, excluding Salcedo's written statements, the evidence was clearly sufficient to convict appellant of the charged offenses. See <u>McLean v. Commonwealth.</u> 32

Va. App. 200, 211, 527 S.E.2d 443, 448 (2000). From the record presented on appeal, we conclude that any error on the part of the trial court was harmless error because the evidence of appellant's guilt was "so overwhelming" that any error on the part of the trial court in relying on a portion of Salcedo's written statement was "insignificant by comparison." Ferguson, 16 Va. App. at 12, 427 S.E.2d at 442.

## B. Sufficiency

Appellant also contends that the evidence was not sufficient to convict him as a principal in the second degree of robbery, use of a firearm in the commission of robbery, and participating in a criminal act for the benefit of a gang.

"When a defendant challenges on appeal the sufficiency of the evidence to sustain his conviction, this Court 'has a duty to examine all the evidence that tends to support the conviction.'" Hamilton v. Commonwealth, 279 Va. 94, 103, 688 S.E.2d 168, 173 (2010) (quoting Bolden v. Commonwealth, 275 Va. 144, 147, 654 S.E.2d 584, 586 (2008)). After viewing the evidence in the light most favorable to the Commonwealth, the question is whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); accord Corado v. Commonwealth, 47 Va. App. 315, 623 S.E.2d 452 (2005). "If there is evidence to support the conviction, the reviewing court is not permitted to substitute its judgment, even if its view of the evidence might differ from the conclusions reached by the finder of fact at the trial." Commonwealth v. Taylor, 256 Va. 514, 518, 506 S.E.2d 312, 314 (1998). "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995).

"'Circumstantial evidence [presented during the course of the trial] is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" Holloway v. Commonwealth, 57 Va. App. 658, 665, 705 S.E.2d 510, 513 (2011) (quoting Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983)). "The statement that circumstantial evidence must exclude every reasonable theory of innocence is simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt." Commonwealth v. Hudson, 265 Va. 505, 513, 578 S.E.2d 781, 785 (2003).

### 1. Robbery and Use of a Firearm in the Commission of Robbery

Appellant contends that the trial court erred in finding him guilty as a principal in the second degree of robbery and use of a firearm in commission of robbery. He asserts that there was no direct evidence that he participated in the robbery or knew that Turner was going to rob the convenience store.

"It is a well-settled rule that a defendant is guilty as a principal in the second degree if he is guilty of some overt act done knowingly in furtherance of the commission of the crime, or if he shared in the criminal intent of the principal committing the crime." McMorris v. Commonwealth, 276 Va. 500, 505, 666 S.E.2d 348, 351 (2008).[13] In order to convict an accused as a principal in the second degree, the Commonwealth must prove "that the defendant procured, encouraged, countenanced, or approved the criminal act." Id. at 505, 666 S.E.2d at 350.

Here, the evidence presented at trial proved that throughout the day of August 16, 2009, appellant, Salcedo, and Turner repeatedly entered the convenience store. Each wore gang colors and the black and yellow "three-sixty" beads associated with the Latin Kings. Hunt, who was

---

[13] "In the case of every felony, every principal in the second degree and every accessory before the fact may be indicted, tried, convicted and punished in all respects as if a principal in the first degree." Code § 18.2-18.

- 11 -

present for most of the day, saw two guns laying "[b]arrel to butt" in the van in which the men were riding and heard appellant, Salcedo, and Turner discuss that they needed money to buy marijuana. At some point during the evening prior to his departure from the group, Hunt heard Salcedo tell Turner that he needed to "man up." Appellant was the driver of the van when they returned to the area of the convenience store at approximately 11:00 p.m. He parked the van where he was told to park it, out of sight from the convenience store. Appellant was present when Turner came running back with a shirt on his head while carrying the cash register drawer. Appellant drove the van away from the crime scene and saw Turner throw the shirt covering his head out of the van window. He stopped the van at a dumpster where Turner threw out the cash register drawer.

From the record presented on appeal, we conclude that the trial court did not err in finding the evidence sufficient to prove appellant was guilty of robbery and use of a firearm in the commission of robbery as a principal in the second degree. See Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (holding appropriate sufficiency of evidence question is whether "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt'" (quoting Jackson, 443 U.S. at 319)).

### 2. Code § 18.2-46.2

Appellant concedes there was "ample" evidence presented to prove that he was a member of the Latin Kings. He contends, however, that the Commonwealth failed to prove beyond a reasonable doubt that the robbery was committed for the benefit of a criminal street gang in violation of Code § 18.2-46.2.[14]

---

[14] In his first assignment of error, appellant challenges the sufficiency of the evidence in relation to his conviction for participation in a criminal act for the benefit of a prohibited criminal street gang. Because appellant also raises the same argument in his second assignment of error, we address the two assignments of error together.

Code § 18.2-46.2(A) provides in pertinent part that:

> Any person who actively participates in or is a member of a criminal street gang and who knowingly and willfully participates in any predicate criminal act committed for the benefit of, at the direction of, or in association with any criminal street gang shall be guilty of a Class 5 felony.

The Commonwealth must prove three elements to sustain a conviction under the statute.

> First, a person must actively participate in or be a member of a criminal street gang. Second, the person must knowingly and willfully participate in a predicate criminal act. Third, the act must be committed for the benefit of, at the direction of, or in association with the gang. The term "[p]redicate criminal act" is defined as, among other things, "any violation of § 18.2-42", assault or battery by a mob.

Hamilton, 279 Va. at 108, 688 S.E.2d at 177 (quoting Code § 18.2-46.1).

Appellant contests only the sufficiency of the evidence with respect to the third element: that the criminal act was committed for the benefit of a gang. The record on appeal demonstrates that appellant was present when Salcedo, a high-ranking gang member in the Latin Kings, told Turner to "man up," a command used by the Latin Kings. In the Latin Kings gang language, the term "man up" is a command from a higher-ranking gang member to a lower-ranking gang member to engage in conduct as directed. Throughout the day of the robbery, appellant was seen on the surveillance video from the convenience store wearing the black and yellow "three-sixty" beads associated with the Latin Kings. Additionally, the surveillance video showed Turner wearing the colors of the Latin Kings when he committed the robbery. The Commonwealth's gang expert witness testified that members of the Latin Kings only show their beads when they want others to know they are part of that street gang. We cannot say, based on the record before us on appeal, that "no rational fact finder," Haskins v. Commonwealth, 44 Va. App. 1, 9, 602 S.E.2d 402, 406 (2004), would have come to the conclusion that the robbery was committed "for the benefit of, in association with, or at the direction of" a criminal street gang in violation of

Code § 18.2-46.2.  Accordingly, we conclude that the trial court did not err in finding the evidence sufficient to convict appellant of robbery "for the benefit of, in association with, or at the direction of" a criminal street gang in violation of Code § 18.2-46.2.

### III.  CONCLUSION

For the foregoing reasons, we affirm appellant's convictions.

<u>Affirmed.</u>