Present:  Hassell, C.J., Lacy, Keenan, Koontz, Lemons, and Agee, JJ., and Carrico, S.J.

LAWRENCE MCDOWELL

                                             OPINION BY
v.  Record No. 060989        SENIOR JUSTICE HARRY L. CARRICO
                                            March 2, 2007
COMMONWEALTH OF VIRGINIA

            FROM THE COURT OF APPEALS OF VIRGINIA

     The defendant, Lawrence McDowell, was convicted in a bench trial of grand larceny in violation of Code § 18.2-95 and grand larceny with intent to sell and distribute property with a value of $200.00 or more in violation of Code § 18.2-108.01(A).  Both convictions resulted from the shoplifting by the defendant and an accomplice of merchandise from a Rite-Aid drug store in the City of Norfolk.  In a published opinion, the Court of Appeals affirmed both convictions.  McDowell v. Commonwealth, 48 Va. App. 104, 628 S.E.2d 542 (2006).  This Court awarded the defendant an appeal.

     The record shows that Corey L. Woods, Sr., an undercover detective employed by Rite-Aid, observed the defendant and his accomplice removing merchandise from store shelves and stuffing it into their clothing.  However, the two thieves managed to escape from the store with the stolen merchandise and none of it was ever recovered.

     In shoplifting cases, Detective Woods uses a "Telethon gun" to conduct an inventory and verify what merchandise has been

stolen.  A Telethon gun is a hand-held computer device connected to Rite-Aid's computer inventory system and linked with the store's cash registers.  The gun reflects inventory on hand and is automatically updated immediately when merchandise is added or is sold.

Within three to four hours before the theft in question occurred, a store-wide inventory had been conducted with the use of a Telethon gun by an outside contractor that happened to be the same company that supplied Telethon guns to Rite-Aid for inventory purposes.  With this inventory as his database, Detective Woods used the Telethon gun to inventory what merchandise was on hand after the theft and to produce a "Box-List Sheets Report" (the Report).  The Report listed merchandise missing between the time the store-wide inventory was conducted on the day in question and the time Detective Woods used the Telethon gun to conduct his inventory after the defendant and his accomplice had left "gaps" and "holes" and "almost empty" shelves from which they had removed merchandise.  The Report described the stolen items and showed the "STORE SELLING PRICE" of each item, totaling $1,179.93.

In the trial court, the Commonwealth offered the Report into evidence to establish the value of the stolen merchandise. Over the defendant's objection that the Report was hearsay, the trial court admitted the Report under the business record

2

exception to the hearsay rule, but only as "circumstantial evidence of a price on a particular date." The defendant's sole contention on appeal to this Court is that the trial court erred in admitting the Report into evidence as a business record and the Court of Appeals erred in affirming the trial court's ruling.[1]

The defendant argues that the Report does not qualify as a business record because the Commonwealth did not call a representative of the outside contractor or a witness from Rite-Aid's management to verify the inventory conducted three to four hours before the theft or to testify that it was performed in the regular course of business. The defendant also argues that "the inventory was not within [Woods'] personal knowledge nor was he sufficiently familiar with the regularity of those inventories in the course of business at Rite-Aid."

"[H]earsay evidence is inadmissible unless it falls within one of the recognized exceptions to the hearsay rule," and "the party attempting to introduce a hearsay statement has the burden of showing the statement falls within one of the exceptions." Robinson v. Commonwealth, 258 Va. 3, 6, 516 S.E.2d 475, 476-77

---

[1] This Court has previously held that "[i]n determining the admissibility of computer records, when the argument has been advanced that they are inadmissible hearsay, [this Court has] employed the traditional business records exception to the hearsay rule. Kettler & Scott, Inc. v. Earth Technology Cos., Inc., 248 Va. 450, 457, 449 S.E.2d 782, 785 (1994).

3

(1999).  "As a recognized exception to the hearsay rule, [this Court has] adopted the modern Shopbook Rule, allowing in given cases the admission into evidence of verified regular entries without requiring proof from the original observers or record keepers."  Neeley v. Johnson, 215 Va. 565, 571, 211 S.E.2d 100, 106 (1975).  See also Sparks v. Commonwealth, 24 Va. App. 279, 282, 482 S.E.2d 69, 70 (1997).

"In many cases,. . . practical necessity requires the admission of written factual evidence based on considerations other than the personal knowledge of the recorder, provided there is a circumstantial guarantee of trustworthiness."  "Automatic" Sprinkler Corp. of America v. Coley & Petersen, Inc., 219 Va. 781, 792, 250 S.E.2d 765, 773 (1979).  "The trustworthiness or reliability of the records is guaranteed by the regularity of their preparation and the fact that the records are relied upon in the transaction of business by the person or entities for which they are kept" and they are "kept in the ordinary course of business made contemporaneously with the event by persons having the duty to keep a true record."  Id. at 793, 250 S.E.2d at 773.  The final test "is whether the documents sought to be introduced are the type of records which are relied upon by those who prepare them or for whom they are prepared."  Id.

These principles were applied in a strikingly similar situation in Ashley v. Commonwealth, 220 Va. 705, 261 S.E.2d 323 (1980). There, in testimony offered to establish the number, weight, and value of hams the accused had stolen from the Gwaltney company in Smithfield, the company's security director used an inventory prepared by other employees several days before the theft. The inventory records were no longer in existence at the time of trial. The accused argued that this testimony "was based upon business records that [the security director] did not maintain, rather than upon his personal observation, and was not admissible under the modern Shopbook Rule." Id. at 707, 261 S.E.2d at 324. This Court rejected the argument, noting that the inventory records were "compiled in the regular course of employment as a security director, both from inventory taken and maintained by other employees in the regular course of business and from his own personal calculation." Id. at 708, 261 S.E.2d at 325.

The only distinction between Ashley and this case is that the inventory was conducted there by other Smithfield employees while it was conducted here by an outside contractor. But this is a distinction without a difference. The outside contractor was an entity "having the duty to keep a true record," Sprinkler Corp., 219 Va. at 793, 250 S.E.2d at 773, and it conducted inventories at the Rite-Aid store "maybe once every six months."

5

Furthermore, Detective Woods testified that he was an eight-year employee of Rite-Aid, that he was familiar with how Rite-Aid kept "track of their inventory," and that he was "knowledgeable" about the inventory conducted earlier on the day of the theft. That inventory was conducted with Rite-Aid's own Telethon gun, Woods had been trained by the supplier of the gun on its use "[t]o conduct inventory," and he had used the gun to generate "Box-List Sheets Reports" for Rite-Aid over a period of four or five years "in many cases and many times" in his "capacity as a loss prevention officer" and "as part of [his] job typically," that is to say, in the regular course of business.

Hence, there was a "regularity of . . . preparation" of "Box-List Sheets Reports" upon which Rite-Aid relied "in the transaction of business," thus guaranteeing "the trustworthiness or reliability" of the Report in this case. Sprinkler Corp., Id. at 793, 250 S.E.2d at 773. In these circumstances, it was not necessary for the Commonwealth to call a representative of the outside contractor or a witness from Rite-Aid's management to verify the inventory conducted three to four hours before the theft or to testify that it was performed in the regular course of business.[2]

_____

[2] The defendant has argued on appeal that the Commonwealth "made no attempt to show that [a representative of the outside

6

We find that the Report qualifies as a business record under the Shopbook Rule.  The trial court did not err, therefore, in admitting the Report into evidence, and the Court of Appeals did not err in approving the trial court's ruling. Accordingly, the judgment of the Court of Appeals will be affirmed.

<u>Affirmed</u>.

---

contractor or a witness from Rite-Aid] were unavailable." However, the defendant did not raise this point in the trial court, and this Court will not notice it now.  Rule 5:25.