Present: Hassell, C.J., Koontz, Kinser, Goodwyn, and Millette, JJ., and Carrico and Lacy, S.JJ.

DWIGHT KEITH SMITH

                                        OPINION BY
v.      Record No. 091535      SENIOR JUSTICE HARRY L. CARRICO
                                        June 10, 2010
COMMONWEALTH OF VIRGINIA

        FROM THE CIRCUIT COURT OF THE CITY OF WINCHESTER
                John E. Wetsel, Jr., Judge

    In this appeal in a sexually violent predator case, we decide whether the circuit court erred in holding that Dwight Keith Smith "remains a sexually violent predator and remains in need of secure inpatient hospitalization."  This holding was made in Smith's fifth annual review hearing as required by Code § 37.2-910, he having been declared a sexually violent predator in 2004.  The hearing resulted in an order that Smith "be committed to the custody of the Commissioner of the Department of Mental Health, Mental Retardation and Substance Abuse Services" for treatment and confinement in a secure facility.

    This Court awarded Smith an appeal on two assignments of error, (1) that the circuit court erred in considering evidence containing inadmissible and hearsay opinions; and (2) that the evidence was insufficient to support the circuit court's determination that continued civil commitment was necessary.

                        BACKGROUND

    Prior to an annual review hearing, Code § 37.2-910(B) requires a filing with the court of "a report reevaluating the

respondent's condition and recommending treatment." The "report shall be prepared by a licensed psychiatrist or a licensed clinical psychologist skilled in the diagnosis, treatment and risk assessment of sex offenders."

Prior to the review hearing in Smith's case, the Commonwealth filed the written report of Dr. Mario Dennis, a licensed clinical psychologist and the Clinical Director of the Virginia Center for Behavioral Rehabilitation in Burkeville, Virginia, a facility that houses and treats sexually violent predators. The complete file of Smith's treatment for the past year at the Center was filed along with the report. Smith objected to the introduction of the report and the treatment records on the ground they contained inadmissible hearsay and impermissible opinions. The circuit court refused the introduction of the report and excluded opinions contained in the treatment records.[1]

ANALYSIS

In oral argument before this Court, Smith stated that a sexually violent predator case is "kind of like what can happen to you in a criminal law case," i.e., "if you lose, you go into a lockup facility very much like a jail." Accordingly, Smith

_____

[1] The Commonwealth has not assigned cross-error to the circuit court's refusal to allow the introduction of the report into evidence. Accordingly, the question whether the refusal

concluded, "all of the rules of evidence of criminal law should apply."

However, in <u>Shivaee v. Commonwealth</u>, 270 Va. 112, 613 S.E.2d 570 (2005), this Court considered the constitutionality of the Sexually Violent Predator Act (SVPA), formerly Code §§ 37.1-70.1 through 37.1-70.19, the forerunner of present Chapter 9 of Title 37.2, entitled "Civil Commitment of Sexually Violent Predators," Code §§ 37.2-900 through 37.2-920. The two enactments contain similar provisions.

Several observations this Court made in <u>Shivaee</u> are pertinent here:

> The SVPA was codified by the General Assembly as a civil statute, as indicated by its placement in Title 37. Nothing in the SVPA suggests that the legislature sought to create anything other than a civil commitment scheme designed to protect the public from harm.
>
> . . . .
>
> That the General Assembly chose to afford the procedural protections provided in the SVPA does not transform a civil commitment proceeding into a criminal prosecution. Thus, the SVPA is a non-punitive, civil commitment statute.

<u>Id.</u> at 125-26, 613 S.E.2d at 577-78 (citations and internal quotation marks omitted). And, as this Court said in <u>Jenkins v. Director, Va. Ctr. for Behav. Rehab.</u>, 271 Va. 4, 624 S.E.2d 453 (2006): "Even though involuntary civil commitment is a

---

was erroneous is not before the Court at this time. Rule 5:18(b).

3

significant deprivation of liberty to which federal and state procedural due process protections apply, persons subject to these commitment proceedings do not enjoy the same rights attendant to a criminal proceeding." Id. at 15, 624 S.E.2d at 460. These principles will guide our consideration of Smith's assignments of error.

*Inadmissible Hearsay and Opinions*

After the circuit court sustained Smith's objection and refused the introduction of the report required by Code § 37.2-910, the Commonwealth argued that the treatment records Dr. Dennis submitted along with the report "should come in as official business records." Smith objected, stating that the treatment records "are all hearsay [and] don't come in under the [business records] exception [to the hearsay rule]."

The circuit court overruled Smith's objection, citing Commonwealth v. Wynn, 277 Va. 92, 671 S.E.2d 137 (2009), where this Court stated as follows:

> Code § 37.2-908(C) provides that an expert witness testifying at an SVPA trial may state the basis for his opinions. Similarly, pursuant to Code § 8.01-401.1, an expert witness may rely upon facts, circumstances, or data made known to . . . such witness in formulating an opinion; those facts, circumstances or data . . ., if of a type normally relied upon by others in the particular field of expertise in forming opinions and drawing inferences, need not be admissible in evidence.

4

Id. at 100, 671 S.E.2d at 141 (citation and internal quotation marks omitted).[2]

Furthermore, in McDowell v. Commonwealth, 273 Va. 431, 641 S.E.2d 507 (2007), this Court stated as follows:

> As a recognized exception to the hearsay rule, [this Court has] adopted the modern Shopbook Rule, allowing in given cases the admission into evidence of verified regular entries without requiring proof from the original observers or record keepers.
>
> In many cases, . . . practical necessity requires the admission of written factual evidence based on considerations other than the personal knowledge of the recorder, provided there is a circumstantial guarantee of trustworthiness. The trustworthiness or reliability of the records is guaranteed by the regularity of their preparation and the fact that the records are relied upon in the transaction of business by the person or entities for which they are kept and they are kept in the ordinary course of business made contemporaneously with the event by persons having the duty to keep a true record. The final test is whether the documents sought to be introduced are the type of records which are relied upon by those who prepare them or for whom they are prepared.

Id. at 434-35, 641 S.E.2d at 509 (citations and internal quotation marks omitted).

The treatment records at issue in this case easily pass these tests. Dr. Dennis, the Commonwealth's expert witness, testified that "department policy" required the creation of a "master treatment plan for everyone in our treatment program,"

---

[2] The circuit court correctly noted that while an expert witness may rely upon the opinions of others in forming his or her opinion, he or she may not state the content of the other opinions on direct examination. See Commonwealth v. Wynn, 277 Va. at 98-99, 671 S.E.2d at 140.

which is "updated at least annually." Such plans "list the specific areas of risk and treatment needs for the individual and outline[] the goals of that particular element and treatment" and "[w]hat the program will provide to meet those goals." A record is made "of progress that the individual has made since the last master treatment plan and the objective for the treatment plan in that area." Dr. Dennis stated that documents are also maintained entitled "Critical Information Report[s]" that are marked by the therapist and contain noteworthy information. In addition, treatment notes are kept that must be completed by the therapist within twenty-four hours outlining the nature of the treatment provided.

Dr. Dennis testified further that all these records are maintained in the "regular and ordinary course of business for all residents." And he stated that similar records were maintained for Smith in this case.

Neither in the circuit court nor in this Court has Smith identified the particular matters he considers as inadmissible hearsay, apparently content with a broadside assertion that "[i]t is almost entirely hearsay." That is obviously not true, but Smith may find some comfort in the fact that this was a bench trial, and "[a] judge, unlike a juror, is uniquely suited by training, experience and judicial discipline to disregard potentially prejudicial comments and to separate, during the

mental process of adjudication, the admissible from the inadmissible, even though he has heard both." Eckhart v. Commonwealth, 222 Va. 213, 216, 279 S.E.2d 155, 157 (1981).

*Insufficiency of the Evidence*

"The burden of proof at the [annual review] hearing shall be upon the Commonwealth to prove to the court by clear and convincing evidence that the respondent remains a sexually violent predator." Code § 37.2-910(C). In Commonwealth v. Allen, 269 Va. 262, 609 S.E.2d 4 (2005), this Court stated as follows:

> Clear and convincing evidence has been defined as that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal.

Id. at 275, 609 S.E.2d at 13 (citations and internal quotation marks omitted).

"In accordance with established principles of appellate review, we view the facts in the light most favorable to the Commonwealth, the prevailing party below." Shivaee v. Commonwealth, 270 Va. at 127, 613 S.E.2d at 578. When the facts of this case are so viewed, the conclusion is inescapable that the Commonwealth has carried its burden of proving by

clear and convincing evidence that Smith remains a sexually violent predator.

Indeed, Smith has made little or no progress since his last annual review. He is still in Phase I in his treatment, and he must reach Phase III before he can be considered for conditional release. At one point along the way, he moved up to Phase II but then regressed and has stayed in Phase I ever since.

Smith is currently diagnosed, as he has been diagnosed previously, to be suffering from several conditions, including "[p]araph[i]lia NOS, or not otherwise specified, hepoph[i]lia." This is described as "a deviant sexual interest or sexual arousal to adolescents, individuals who are sexually developed, but who are under age and therefore sexual contact with them would be illegal." Smith acknowledges on brief that his predicate offense was for "an aggravated sexual battery involving a 14 year old boy."

Smith has a history of "[a]lcohol dependence." This means that he is "psychologically and physiologically dependent upon . . . alcohol, and withdrawal or abstinence results with some withdrawal symptoms, [or] other physical consequences." Smith denied that he was an alcoholic, and he resisted some "cognitive restructuring" that treatment personnel wanted to provide to help him cope with his alcohol dependence.

Smith also has "[n]arcissistic, anti-social, obsessive-compulsive traits."  A narcissistic trait reflects "self-[ag]grandisement," an anti-social trait reflects "behavior that does not comport to the social expectations," and an obsessive-compulsive trait reflects "an excessive focus on details."  Smith got "self-[ag]grandisement" in his sexual battery of the 14-year-old boy, his behavior did not comport to sexual expectations, and he is described in the record as being "very focused on details."

Smith has "expressed pessimistic views on treat[ment] helping him to be conditionally released."  Yet he has failed to take full advantage of the treatment he was offered.  He has persistently refused to respond to questions from treatment personnel without the advice of his attorney, which "get[s] in the way of making the kind of progress [treatment personnel] like to see."  He has refused to write in a journal, the purpose of which is to "enhance self expression," to help "the individual to become more open" about problems.  He has had "fundamental disagreement [with a] therapist about some treatment related issues."  His primary therapist described him as "defensive," as "having built a protective wall around him[self]" and becoming "skilled [in] projecting blame onto others."

Dr. Dennis expressed the opinion that Smith's "risk to re-offend" is "high" unless he avails "himself of all the tools" on hand to help him "manage [his] risk," that Smith "does remain a sexually violent predator," and that "he does require continued inpatient treatment."

Nothing in the current record disputes the accuracy of Dr. Dennis's opinions or even suggests that there has been any meaningful change in Smith's status since his last review. Accordingly, this Court affirms the judgment of the circuit court committing Smith to the custody of the Commissioner of the Department of Mental Health, Mental Retardation and Substance Abuse Services for appropriate treatment and confinement in a secure facility.

## CONCLUSION

Finding no error in the actions of the circuit court, we will affirm its judgment.

Affirmed.