Present: Kinser, C.J., Lemons, Goodwyn, and Millette, JJ., and Carrico, S.J.

COMMONWEALTH OF VIRGINIA

OPINION BY
v.  Record No. 102314     SENIOR JUSTICE HARRY L. CARRICO
September 16, 2011

DEREK BELL

FROM THE CIRCUIT COURT OF THE CITY OF WAYNESBORO
Humes J. Franklin, Jr., Judge

This appeal in a sexually violent predator proceeding involves the first annual review in the case of Derek Bell. In April of 2009, he was declared by a jury in the Circuit Court of the City of Waynesboro to be a sexually violent predator and was civilly committed by the circuit court to the custody of the Department of Mental Health, Mental Retardation and Substance Abuse Services for appropriate treatment. At the conclusion of the review hearing on May 5, 2010, the circuit court found that Bell "remains a 'sexually violent predator' as defined under Virginia Code § 37.2-900" but that he "satisfies the criteria for conditional release set forth under Virginia Code § 37.2-912."

On May 24, 2010, the court ordered that Bell be granted a conditional release but that he be held in custody pending the preparation of a conditional release plan. A plan was submitted, and the circuit court approved it in a hearing held on September

9, 2010, ordering that Bell be released from the custody of the Department.[1]

Bell does not question the circuit court's finding that he remains a sexually violent predator. However, the Commonwealth does question the circuit court's decision that Bell satisfied the criteria for conditional release, and this Court granted the Commonwealth this appeal to consider that question.

In reviewing the Commonwealth's challenge to the circuit court's judgment, we will view the evidence and all reasonable inferences deducible therefrom in the light most favorable to Bell, the prevailing party below. Commonwealth v. Squire, 278 Va. 746, 749, 685 S.E.2d 631, 632 (2009). When a case is decided by a court and a party objects to the decision on the ground that it is contrary to the evidence, as the Commonwealth objects here, "the judgment of the trial court shall not be set aside unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it." Code § 8.01-680; see also Commonwealth v. Allen, 269 Va. 262, 276, 609 S.E.2d 4, 13 (2005).

BACKGROUND

In Code § 37.2-900, a sexually violent predator is defined as "any person who (i) has been convicted of a sexually violent

---

[1] On July 1, 2009, the title of this organization became the "Department of Behavioral Health and Developmental Services" (DBHDS). 2009 Acts chs. 813, 840.

offense . . . and (ii) because of a mental abnormality or personality disorder, finds it difficult to control his predatory behavior, which makes him likely to engage in sexually violent acts."

Prior to an annual review in a sexually violent predator case, Code § 37.2-910(B) requires the filing with the court of "a report reevaluating the respondent's condition and recommending treatment." The "report shall be prepared by a licensed psychiatrist or a licensed clinical psychologist skilled in the diagnosis, treatment and risk assessment of sex offenders." Id.

In Bell's review hearing, the parties stipulated the admission into evidence of an annual review report prepared by Dr. Michele D. Ebright, Psy.D., and a second opinion in an annual report prepared by Dr. Dennis R. Carpenter, Psy.D. Dr. Ebright is the Director of Psychology at the Virginia Center for Behavioral Rehabilitation (VCBR), and she testified for the Commonwealth at both the review hearing in May 2010 and the conditional release plan hearing in September 2010. On the motion of Bell's attorney, Dr. Carpenter was appointed as a mental health expert by the circuit court to provide a second opinion "in order to assist the court in determining if Mr. Bell remains a sexually violent predator as defined under Section 37.2-900 of the Code of Virginia and continues to require secure

3

inpatient treatment."  Dr. Carpenter did not testify at either the review hearing or the conditional release plan hearing.

In her report, Dr. Ebright stated that Bell suffered from "Hebephilia," although not conclusively because it was not possible to "verify that the necessary duration requirement of 6 months is met in Mr. Bell's case."  Dr. Ebright also diagnosed Bell as suffering from "Antisocial Personality Disorder."  Dr. Ebright concluded that Bell "needs continued intensive inpatient treatment such as is available at VCBR and that conditional release is not recommended."

In his report, Dr. Carpenter also diagnosed Bell as suffering from Hebephilia, although he did not believe "there is sufficient information for this diagnosis at this time."[2]  Dr. Carpenter further diagnosed Bell as suffering from Cannabis Abuse, Alcohol Abuse, and Antisocial Personality Disorder.  While Dr. Carpenter stated that the results of a test given Bell placed him "in the 'high risk' category range for sexual recidivating,"

---

[2] Bell attacks the finding made by Doctors Ebright and Carpenter that he "might be diagnosed with 'hebephilia' or the sexual attraction to teenagers," which apparently would be classified as a "mental abnormality" under Code § 37.2-900.  But that Code section defines a sexually violent predator as a person who suffers from "a mental abnormality or personality disorder," so proof of only one, not both, of the conditions is sufficient to support a finding that a person is a sexually violent predator.  (Emphasis added.)  Both doctors positively diagnosed Bell as suffering from "Antisocial Personality Disorder."  Bell does not question that finding, so his attack on the inconclusive hebephilia diagnosis gains him nothing.

4

the doctor also stated that he believed Bell's "risk to sexually reoffend has been reduced as a result of the 11 months of intensive residential sex offender treatment services he has received at the VCBR."[3]  However, Dr. Carpenter concluded with this statement: "While I opine that Mr. Bell is making progress in treatment, I do not consider him to be a viable candidate for conditional release at this time.  I believe that an additional year of treatment would give him the opportunity to enter the second phase of treatment . . . and to further solidify his treatment gains."

## ANALYSIS

At an annual review hearing, the Commonwealth has the burden of proving by clear and convincing evidence that the respondent remains a sexually violent predator.  Code § 37.2-910(C).  If the court finds that the respondent remains a sexually violent predator, it must determine whether the respondent should remain in secure inpatient treatment or be conditionally released.  Code § 37.2-910(D); Lotz v. Commonwealth, 277 Va. 345, 349, 672 S.E.2d 833, 836 (2009).  Bell conceded at trial that it was his burden "to establish the criteria" for conditional release, and he makes

---

[3] At trial, Dr. Ebright was asked on cross-examination whether she agreed with Dr. Carpenter's opinion that Bell's risk to sexually re-offend had been reduced as a result of the eleven months of intensive residential sexual offender treatment services he had received at VCBR  Dr. Ebright replied, "I do not."

a similar concession on brief, i.e., by a preponderance of the evidence. We agree with Bell's allocation of the burden of proof, and recognize it as the appropriate allocation on conditional release in sexually violent predator cases.

Under Code § 37.2-910(D), "[t]o determine if the respondent shall be conditionally released, the court shall determine if the respondent meets the criteria for conditional release set forth in § 37.2-912." Code § 37.2-912(A) provides as follows:

> At any time the court considers the respondent's need for secure inpatient treatment pursuant to this chapter, it shall place the respondent on conditional release if it finds that (i) he does not need secure inpatient treatment but needs outpatient treatment or monitoring to prevent his condition from deteriorating to a degree that he would need secure inpatient treatment; (ii) appropriate outpatient supervision and treatment are reasonably available; (iii) there is significant reason to believe that the respondent, if conditionally released, would comply with the conditions specified; and (iv) conditional release will not present an undue risk to public safety.

As noted previously, Bell does not question the circuit court's finding that he remains a sexually violent predator. Hence, the only question left for decision is whether Bell satisfied the criteria set forth in Code § 37.2-912 for conditional release. Bell argues that he did satisfy the requirements. He says the trial court found "an abundance of evidence which established that Mr. Bell satisfied all criteria for conditional release listed under § 37.2-912."

6

We disagree with Bell. The difficulty with his argument is that, even when the evidence is viewed in the light most favorable to him, he cannot clear the first hurdle in his pathway to conditional release, i.e., the first criterion set forth in Code § 37.2-912(A). If that is the case, we need not consider the three remaining criteria because they would become moot. "[C]onditional release is permitted only after a judicial determination that [the respondent] satisfies all four criteria stated in Code § 37.2-912(A)." Lotz, 277 Va. at 350, 672 S.E.2d at 836 (emphasis added).

The first criterion required Bell to show that he "does not need secure inpatient treatment but needs outpatient treatment or monitoring to prevent his condition from deteriorating to a degree that he would need secure inpatient treatment." Code § 37.2-912(A). Two experts in the sexual offender field, Dr. Ebright and Bell's own expert, Dr. Carpenter, clearly opined without objection that Bell does need secure inpatient treatment.

But, Bell contends, under Code § 37.2-908(C), the opinion of an expert witness in a sexually violent predator case may "not be dispositive of whether the respondent is a sexually violent predator." However, the Code section permits an expert witness to "testify at the trial as to his diagnosis, his opinion as to whether the respondent meets the definition of a sexually violent predator, his recommendation as to treatment, and the basis for

7

his opinions," and we are not precluded from considering and giving effect to the opinions expressed by Dr. Ebright and Dr. Carpenter on their "diagnos[e]s, . . . recommendation[s] as to treatment, and the bas[e]s for [their] opinions." Code § 37.2-908(C).

We will first identify the evidence that may be considered favorable to Bell in carrying his burden of proving that he satisfied the first criterion of Code § 37.2-912(A). There is, of course, the opinion of Dr. Carpenter that Bell's "risk to sexually reoffend has been reduced as a result of the 11 months of intensive residential sex offender treatment services he has received at the VCBR." Dr. Carpenter also stated that Bell has "reported that he is a Christian," that "he and his family attend church on a regular basis," that "he has continued to attend church services on a regular basis while at the VCBR," that he "has continued to sing in the Choir," and that "he reads his Bible on a regular basis."

In addition, Dr. Ebright noted Bell's "pro-social behavior" in cleaning "the water fountain on his unit after another resident urinated in it," being "responsible for the return of a library book, even though [there was] no record of him having the item," and being "pleasant and positive toward his new therapist when she introduced herself to him."

Dr. Ebright also stated that he had "the aptitude to participate in and benefit from sex offender treatment," that he could be "a pleasant and cooperative individual," that he possessed "the ability to communicate effectively when he desires to garner his resources to that end," and that if he chose "to focus his time and energy on working through the treatment program, he may make considerable treatment gains." However, in the end, Dr. Ebright stated that Bell has just "not made this choice as of yet."

So far as the first criterion set forth in Code § 37.2-912(A) is concerned, the bulk of the rest of Bell's record may be considered as anything but favorable. He is still in the first phase of the three-phase treatment program at VCBR, and he must reach Phase III before he can be considered for conditional release. See Smith v. Commonwealth, 280 Va. 178, 185, 694 S.E.2d 578, 581 (2010).

Also, residents are expected to attend all group therapy meetings. According to Dr. Ebright, "group attendance is the most elemental aspect of treatment." But Bell's attendance rate in the first quarter of the twelve-month treatment period was 79%, 5% below the 84% overall average of residents, 55% in the second quarter, 48% in the third quarter, and only 15% in the final quarter. As Dr. Ebright put it, Bell "sort of opted out of treatment."

Further, in the twelve-month period preceding his first annual review hearing, a total of twenty-four incidents were documented against him in "Resident Behavior Report[s]," including knocking on a window of a room where a staff member was working and sticking "his tongue out at her"; "1 incident of physical aggression"; engaging "in a 'play fight' with another resident [and] laughing when staff responded to what they believed to be an aggressive incident"; repeatedly entering or loitering in places where his presence was prohibited; "cursing loudly, physically posturing in an aggressive stance"; making "threats of violence"; calling a staff member a "dumb bitch"; "shouting obscenities"; telling a staff member he did not "give a **** about any write-ups because they would not affect him in court"; and threatening another resident that he "would **** him up and break his mother****** neck."

Finally, one would think that if Bell were ever to change his pattern of behavior, it would be after the circuit court announced at the May 5, 2010 review hearing that it would grant Bell conditional release and he would want to make a good impression at the conditional release plan hearing on September 9, 2010. Surprisingly, that is not the way Bell would have it. At the hearing on the conditional release plan, Dr. Ebright was asked whether Bell

10

"ha[d] adjusted to treatment at the VCBR" since the review hearing. She responded as follows:

> I would say it's basically been unchanged from what was summarized and discussed at the time of his annual review. He continues to attend programming at a very low rate and to have numerous behavioral reports documenting deviant behavior, verbally abusive behavior, in one instance some physical aggression. So it's just the same pattern has continued.

When asked how Bell responded to the staff's intervention concerning these later behavioral shortcomings, Dr. Ebright stated that he was "uncooperative and argumentative and potentially verbally abusive."

## CONCLUSION

On this record, only one conclusion is permissible: Bell has not satisfied the first criterion set forth in Code § 37.2-912(A) and he does need secure inpatient treatment. Therefore, the judgment of the circuit court is without evidence to support it, and it will be reversed and final judgment will be entered here in favor of the Commonwealth.

Reversed and final judgment.

11