PRESENT:  All the Justices

MARY ARNOLD

OPINION BY
v.    Record No. 110394          JUSTICE WILLIAM C. MIMS
                                      April 20, 2012
JONATHAN PETER WALLACE, ET AL.

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Jan L. Brodie, Judge

In this appeal, we consider whether the circuit court erred in admitting medical records under the business records exception and finding an expert physician qualified to testify when her partner previously had been retained by the opposing party.

I. BACKGROUND AND PROCEEDINGS BELOW

Mary Arnold was injured in an automobile collision on April 28, 2005.  She brought a negligence action against the other driver, Jonathan Peter Wallace, who was uninsured.  Travelers Insurance Company, Arnold's carrier, defended the suit pursuant to its uninsured motorist coverage.  The matter was tried to a jury, which awarded a verdict for Arnold in the amount of $9,134.61.  Arnold appealed to this Court, assigning error to two of the circuit court's rulings.

II. MEDICAL RECORDS EXHIBIT

Arnold's first assignment of error relates to the introduction into evidence of her medical records from her

treating physicians.  The records contained hearsay opinions related to her pre-existing physical conditions.

In her case-in-chief, Arnold called Dr. Charles Gardner, her treating physician following the collision.  Dr. Gardner testified that Arnold had been a patient of his practice group, Northern Virginia Family Practice Associates ("NVFP"), since approximately 1994.  A week after the collision, Arnold presented to Dr. Gardner complaining of neck and back pain, headaches, nausea, and vomiting.  According to Dr. Gardner, Arnold's neck and back pain was caused by the collision, since it "started at the moment that she had had the automobile accident."  He testified that an MRI revealed spinal stenosis,[1] as well as bone edema,[2] which he opined was caused by the collision.  He also diagnosed her with post-concussion syndrome.[3]

Wallace asked Dr. Gardner on cross-examination about a patient's medical records or "chart" maintained by NVFP.  Dr. Gardner confirmed that each patient had a single chart and that when a patient had an appointment with the practice she was not necessarily seeing one specific physician.  The treating NVFP

---

[1] Spinal stenosis, according to Dr. Gardner, is a condition somewhat like advanced arthritis, caused by the "closing down" of space between the bones through which the spinal nerves pass.

[2] Dr. Gardner explained that "bone edema" was "like a bone bruise" and "shows up when you have an acute injury to the bone."

[3] Dr. Gardner defined post-concussion syndrome as a series of symptoms following a brain trauma, including headache, confusion, speech difficulties, nausea, vomiting, and ataxia.

physician would utilize that chart for a returning patient and add to it following the appointment. According to Dr. Gardner, "[w]hen you have an existing chart, the way our charts are set up, you can very quickly look and see what the patient's medical problems are, what medications they are on. And of course, if you want to look . . . further, you've got the previous records to refer to."

Wallace then showed Dr. Gardner an exhibit that Dr. Gardner identified as Mary Arnold's medical records chart from NVFP. Dr. Gardner confirmed that it was regularly kept in NVFP's practice. Wallace moved to admit the exhibit into evidence. Arnold objected on the grounds that a proper foundation had not been laid that Dr. Gardner was the records custodian. She further objected that Wallace "[h]asn't laid the elements of the business records foundation, and I don't want to tell him what it is. That's his job." Following a renewed cross-examination of Dr. Gardner, Wallace again offered the exhibit into evidence, and Arnold renewed her objection for lack of foundation. The circuit court overruled the objection and admitted the exhibit.

Thereafter, Wallace asked Dr. Gardner about hearsay entries in Arnold's chart. Five of the entries, made by practitioners other than Dr. Gardner, contained medical observations indicating that Arnold suffered from a variety of physical ailments that preceded the collision, including a deteriorating

cervical disc, extreme stress, dizziness, migraine headaches, blurred vision, and pain and numbness in her limbs.  Arnold made no objection during this testimony.

On appeal, Arnold assigns error to the circuit court's overruling of her objection to the exhibit and its admission into evidence.  She argues that Wallace failed to establish the elements of the business records exception to the hearsay rule.  According to Arnold, those elements include a showing that the medical records were factual in nature and not medical opinions.  Wallace responds that he established an adequate foundation and that Arnold failed to apprise the circuit court that she objected to any medical opinions contained in the chart.

A hearsay objection lies against the admission of written statements which were made out of court and are offered for the truth of what they say.  See Virginia Rules of Evidence 2:801 and 2:802 (enacted by 2012 Acts chs. 688, 708).  Business records, including medical records, are admissible as an exception to the hearsay rule, "provided there is a circumstantial guarantee of trustworthiness."  Smith v. Commonwealth, 280 Va. 178, 183, 694 S.E.2d 578, 580 (2010) (quoting McDowell v. Commonwealth, 273 Va. 431, 434, 641 S.E.2d 507, 509 (2007)).

4

The requisite trustworthiness or reliability of the hearsay statements in the documents, we have explained, is guaranteed by a showing of:

> "the regularity of [the documents'] preparation and the fact that the records are relied upon in the transaction of business by the person or entities for which they are kept and they are kept in the ordinary course of business made contemporaneously with the event by persons having the duty to keep a true record. The final test is whether the documents sought to be introduced are the type of records which are relied upon by those who prepare them or for whom they are prepared."

Smith, 280 Va. at 183-84, 694 S.E.2d at 580 (quoting McDowell, 273 Va. at 434-35, 641 S.E.2d at 509).

Arnold asserts that in response to her foundation objection Wallace was required to show that the chart was factual in nature and not opinion. Arnold relies on Neely v. Johnson, 215 Va. 565, 571, 211 S.E.2d 100, 106 (1975), where we held that the business records exception does not "include opinions and conclusions of physicians or others recorded in hospital records." Arnold argues that pursuant to Neely, the factual nature of medical records is an element of the foundation and therefore must be established prior to their admission in response to a "foundation" objection. She concludes that Wallace failed to make such a showing and therefore failed to lay an adequate foundation, and that the circuit court thus erred in admitting the medical records. Wallace responds that,

5

pursuant to Neely, the presence of opinion in a proffered business record constitutes an independent ground for objection which Arnold failed to assert at trial.  We agree with Wallace.

Our cases do not require that the party offering a document for admission under the business records exception establish that all of the entries therein are factual in nature and contain no opinions.  An objection to the foundation of an entire chart does not encompass an objection to specific opinions in individual documents.  Rather, it is incumbent upon the objecting party to identify the passages within a business record offered into evidence that contain inadmissible opinions.  We therefore hold that Arnold's objection to "foundation" did not apprise the circuit court of additional specific objections to opinions in the chart.  Thus the objection was waived.  Rule 5:25.  Compare Booker v. Commonwealth, 276 Va. 37, 41, 661 S.E.2d 461, 463 (2008) (objection sufficient when it "informed [the circuit court] with reasonable certainty of [the litigant's] concern") with Jones v. Ford Motor Co., 263 Va. 237, 259, 559 S.E.2d 592, 603-04 (2002) (objection to foundation not sufficient to encompass arguments made on appeal).

We conclude that Wallace established a sufficient foundation for the admission of Arnold's chart pursuant to the business records exception to the hearsay rule.  See Smith, 280 Va. at 183-84, 694 S.E.2d at 580.  Dr. Gardner identified the

6

proposed exhibit as Arnold's chart.  He testified as to the

regular preparation of the chart as part of NVFP's practice and

that it was kept in the ordinary course of NVFP's business.

Finally, he testified regarding the treating physicians'

reliance on the chart to assess a patient and form a diagnosis.

### III. TESTIMONY OF DR. HARTMAN

Arnold next assigns error to the circuit court's decision

to allow Dr. Elizabeth M. Hartman to testify as an expert

witness for Wallace.  During discovery, Wallace filed his expert

witness designation, which included Dr. Charles M. Citrin.

Arnold had previously retained Dr. Citrin.  After the filing of

the designation, she alerted Wallace of this fact.  Wallace

disputed any potential conflict, but filed a supplement to his

designation naming Dr. Hartman, a member of the same practice

group, as an alternate to Dr. Citrin.

Arnold then moved to exclude the testimony of Dr. Citrin.

The circuit court granted the motion.  In its order, the court

found that Arnold's counsel had a reasonable expectation that a

confidential relationship existed with Dr. Citrin.[4]  The circuit

court ruled that Wallace could substitute Dr. Hartman's

designation for Dr. Citrin's designation.  Arnold noted her

objection.  Arnold later filed objections to Wallace's list of

---

[4] The order did not address whether Arnold's counsel
actually disclosed any confidential or privileged information to
Dr. Citrin.

witnesses and exhibits, including an objection to Dr. Hartman. Arnold explained that Dr. Hartman was the partner of Dr. Citrin and that his disqualification should be imputed to Dr. Hartman.

At trial, Wallace called Dr. Hartman to testify. During voir dire examination by Arnold, Dr. Hartman testified that Dr. Citrin did not share any confidential information with her. Rather, she stated that "he wanted [Dr. Hartman] to take over the case. He didn't want to do the case anymore." She testified that Dr. Citrin provided her with Arnold's medical records and a copy of his designation prepared for Wallace. Some of the pages of the medical records given to Dr. Hartman contained handwritten notes. Dr. Hartman did not know whose notes they were, and some of the notes were indecipherable. There was no showing during the voir dire that the notes contained any confidential information that Arnold had shared with Dr. Citrin.

Following the voir dire, Arnold argued that Dr. Hartman should be disqualified because of the notes. The circuit court denied the motion. Arnold assigns error to the circuit court's ruling that Dr. Hartman was not disqualified from testifying due to a conflict of interest. Arnold argues that "if Dr. Citrin communicated substantive confidential information to his partner Dr. Hartman, the affiliated expert disqualification rule applies to disqualify her." (Emphasis added.)

We review the circuit court's decision to allow Dr. Hartman to testify for an abuse of discretion. See Landrum v. Chippenham & Johnston-Willis Hosps., Inc., 282 Va. 346, 349, 717 S.E.2d 134, 135 (2011). Arnold, as the party seeking disqualification, bore the burden of offering sufficient evidence that Dr. Citrin revealed confidential information to Dr. Hartman. See Wright v. Kaye, 267 Va. 510, 526, 593 S.E.2d 307, 316 (2004) (adopting majority rule requiring moving party to show transfer of confidential information). Cf. Turner v. Thiel, 262 Va. 597, 601-02, 553 S.E.2d 765, 768 (2001) (requiring party moving for disqualification of side-switching expert to show actual disclosure of confidential information). There is no evidence in the record that Arnold shared any confidential information with Dr. Citrin, or that Dr. Citrin in turn shared any confidential information with Dr. Hartman. Dr. Hartman testified that Dr. Citrin told her only that he "didn't want to do the case anymore" and provided Arnold's medical records to her. Arnold failed to establish that the handwritten notes, many of which were indecipherable, contained any confidential or privileged information. Consequently, we conclude that the circuit court did not abuse its discretion in allowing Dr. Hartman to testify.

## IV. CONCLUSION

For the reasons stated, we will affirm the judgment of the circuit court.

<u>Affirmed.</u>