UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Kelsey, Alston and Decker
Argued at Alexandria, Virginia

RICHARD ANDREW JENKINS

v.     Record No. 0362-13-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE D. ARTHUR KELSEY
JANUARY 14, 2014

FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Herman A. Whisenant, Jr., Judge Designate

Christopher Feldmann (Irving & Irving, P.C., on brief),
for appellant.

Craig W. Stallard, Assistant Attorney General (Kenneth
T. Cuccinelli, II, Attorney General, on brief), for appellee.

The trial court found Richard Andrew Jenkins guilty of nine counts of embezzlement.

On appeal, Jenkins argues that the trial court erroneously admitted certain business records. The

inadmissible evidence, Jenkins contends, substantially swayed the trial court's ultimate decision

and thus cannot be sidelined on appeal as harmless error. Agreeing with Jenkins, we reverse his

convictions and remand for retrial if the Commonwealth is so advised.

I.

On November 27, 2007, a deputy sheriff stopped Joseph Trivett for a traffic infraction

and discovered in Trivett's car a "cardboard shipping box with a FedEx label [addressed] to

Wireless Jungle." App. at 67. The box contained eleven new cell phones, most in their original

packaging. Trivett told the deputy he had received the phones from Jenkins, a warehouse

manager at Sound Communications, a cell phone distributor doing business as Wireless Jungle.

Trivett said he planned to sell the phones and split the revenue evenly with Jenkins pursuant to

their agreement. The owner of Sound Communications later identified the phones as stolen.

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

A later analysis of the business records of Sound Communications showed that 541 phones were missing from the company's inventory. The missing phones were part of shipments received from August to November 2007. All but one of these shipments went to a warehouse using internal surveillance cameras. At trial, video and still photographs obtained from these cameras showed Jenkins receiving various phone shipments during this period and, on eight different occasions, failing to enter some or all of the shipping cartons into the computerized inventory system.

On some of these occasions, the video showed Jenkins either alone or with his half-brother, a fellow employee at the warehouse, giving uninventoried boxes of phones to the company's regular delivery driver or one of its regional managers, a co-defendant. On other occasions, the video showed Jenkins personally taking uninventoried boxes of phones out of the warehouse and loading them onto his pickup truck. Trivett's vehicle contained six phones taken during one such episode. As for the single shipment of missing phones that arrived at the warehouse without a surveillance camera, company records showed that five of those phones were among those found in Trivett's vehicle.

During this time frame, Jenkins maintained a checking account with Rappahannock National Bank, formerly Provident Bank. Checks from this account, signed in the name of "Richard A. Jenkins," went toward various expenses of the Jenkins family. Nearly all of the deposits to the account came from a PayPal account in the name of "Bryan Shipman." The PayPal account was linked to an eBay account that sold "a large number of cell phones." Id. at 294. The eBay account seller name was "electronicspecialties," which matched the email address, "electronicspecialties@gmail.com," on the PayPal account. Id. at 927-29. Shipman testified at trial that he knew nothing about either of these accounts, implying that someone had fraudulently opened them in his name. Shipman added that, shortly before the eBay and PayPal

accounts were opened, he had lost his wallet, which contained all of his personal identifying information.

During Shipman's testimony, the prosecutor offered into evidence copies of the eBay and PayPal account statements. Jenkins's counsel objected on the ground that Shipman, who testified that the accounts were not his and that he had never seen them before, could not authenticate the account statements or lay the necessary business-records foundation for either statement. "We don't know how these [documents] were prepared," counsel argued, or "who prepared them." Id. at 296. The court summarily overruled the objection and admitted both statements into evidence.

The fraudulent eBay account showed dozens of "NEW NEVER USED" cell phones had been sold with the sale proceeds recorded in the associated PayPal account. Id. at 927-28. The PayPal account statement included a telephone number registered to Jenkins and showed all of the sale proceeds being deposited directly to a retail checking account that Jenkins had opened in his own name in late June 2007. The account was identified by its specific account number at Rappahannock National Bank and its predecessor, Provident Bank.

During closing arguments, the prosecutor summarized the incriminating evidence against Jenkins. Among other things, the prosecutor pointed out that the money trail from the fraudulent eBay and PayPal accounts — "forty-five transfers worth thousands of dollars," id. at 377 — led directly to the checking account owned by Jenkins. "We then look at the [P]ay[P]al lists themselves," the prosecutor added, "and they're all cellular telephones that are identical to the ones that are on the list of the missing telephones." Id. at 378.

In reply, Jenkins's counsel argued that the incriminating testimony and videotape evidence did not link Jenkins to the specific stolen phones referred to in the nine indictments. After renewing his earlier, unsuccessful objection to admission of the PayPal and eBay accounts, counsel conceded: "I'll state for the record that this is the link that ties Mr. Jenkins to the thefts.

It seems to me that it was critical that those be documented." Id. at 384. In rebuttal, the prosecutor agreed that the eBay account "does in fact tie" the money flow directly to Jenkins's checking account at Rappahannock National Bank. Id. at 389.

The trial court announced its ruling from the bench. Finding Jenkins guilty on all nine counts of embezzlement, the court credited the testimony of the Commonwealth's witnesses and found persuasive the inculpatory inferences that could be drawn from the surveillance videos. The court then explained:

> Then we go to the PayPal account. They brought in Mr. Shipman who said . . . he lived at that address. It was his social security number. He testified [he] never opened up an account like that and obviously [didn't] know whose telephone number it is. Well, they found out whose telephone number it was and it was [Jenkins's] on that PayPal account.

Id. at 393. Just after making this observation, the trial court addressed how the money trail led to Jenkins's personal checking account — thus providing a compelling narrative of circumstantial evidence removing any reasonable doubt as to Jenkins's guilt.[1]

## II.

On appeal, Jenkins argues that the trial court erred as a matter of law in admitting the eBay and PayPal account statements because no witness properly authenticated these documents or laid a proper foundation for their admission as business records. As the Commonwealth concedes on appeal, "No evidence was presented at trial regarding the preparation of the records,

---

[1] At trial, Jenkins claimed he knew nothing about this checking account or the checks written on the account. In its factual findings, the trial court expressly rejected this testimony as an obvious prevarication. Sitting as factfinder, a trial court is "at liberty to discount [a defendant's] self-serving statements as little more than lying to 'conceal his guilt,'" Armstead v. Commonwealth, 56 Va. App. 569, 581, 695 S.E.2d 561, 567 (2010) (quoting Coleman v. Commonwealth, 52 Va. App. 19, 25, 660 S.E.2d 687, 690 (2008)), and "could treat such prevarications as 'affirmative evidence of guilt,'" id. (quoting Coleman, 52 Va. App. at 25, 660 S.E.2d at 690).

whether the records were relied on by the companies keeping the records, and there was no custodian of the records present in court." Appellee Br. at 7.

Having reviewed the record, we come to the same conclusions.[2] Shipman, the only witness who testified about the eBay and PayPal account statements, knew nothing about who, how, or why the records were created. Suffice it to say, Shipman's testimony could hardly authenticate the documents or lay a proper foundation for them as business records. See Rule 2:901 (Requirement of Authentication or Identification);[3] Rule 2:803(6) (Hearsay Exceptions Applicable Regardless of Availability of the Declarant).[4]

---

[2] Virginia courts, of course, "have no obligation to accept concessions of error" in a criminal case. Copeland v. Commonwealth, 52 Va. App. 529, 531, 664 S.E.2d 528, 529 (2008) (citing United States v. Hairston, 522 F.3d 336, 340 (4th Cir. 2008) (recognizing that "the government's concession of error is not binding on this court"), and Logan v. Commonwealth, 47 Va. App. 168, 172, 622 S.E.2d 771, 773 (2005) (*en banc*)). So, while we respect the Attorney General's concession in this case, we still must exercise our own independent judgment on the merits of the uncontested point. See generally Wright v. Commonwealth, 278 Va. 754, 760 n.3, 685 S.E.2d 655, 658 n.3 (2009) (noting that "[a]lthough the record reflects that the Commonwealth apparently 'conceded'" the point, "the issue is a question of law which is not subject to a concession binding on this Court").

[3] "Authentication is merely the process of showing that a document is genuine and that it is what its proponent claims it to be." Snowden v. Commonwealth, 62 Va. App. 482, 485, 749 S.E.2d 223, 225 (2013) (quoting Owens v. Commonwealth, 10 Va. App. 309, 311, 391 S.E.2d 605, 607 (1990)); see also Jackson v. Commonwealth, 13 Va. App. 599, 602, 413 S.E.2d 662, 664 (1992). This can be accomplished by a variety of evidentiary means, including circumstantial evidence. "The amount of evidence sufficient to establish authenticity will vary according to the type of writing, and the circumstances attending its admission, but generally proof of any circumstances which will support a finding that the writing is genuine will suffice." Williams v. Commonwealth, 35 Va. App. 545, 556-57, 546 S.E.2d 735, 741 (2001) (quoting Walters v. Littleton, 223 Va. 446, 451, 290 S.E.2d 839, 842 (1982)); see also Charles E. Friend & Kent Sinclair, The Law of Evidence in Virginia § 17-1, at 1164 (7th ed. 2012). ("[A]uthentication does not set a high barrier to admissibility, and is generally satisfied by any form of proof that supports a finding that it is what it purports to be.").

[4] The business records exception does require "proof from the original observers or record keepers." Smith v. Commonwealth, 280 Va. 178, 183, 694 S.E.2d 578, 580 (2010) (quoting McDowell v. Commonwealth, 273 Va. 431, 434, 641 S.E.2d 507, 509 (2007)). "[P]ersonal knowledge of the entrant, or of the entrant's information, is no longer an absolute prerequisite to the admissibility of business records, provided that the 'circumstantial guarantees of trustworthiness' — regularity of preparation and reliance upon the records by those for whom they are prepared — are present." Friend & Sinclair, *supra* § 15-22[a], at 1032. To be sure,

The Commonwealth, however, points out that error alone does not necessarily warrant an appellate remedy. We agree. Absent an error of constitutional magnitude, "no judgment shall be arrested or reversed" when "it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." Code § 8.01-678. The harmless error statute "puts a limitation on the powers of this court to reverse the judgment of the trial court — a limitation which we must consider on every application for an appeal and on the hearing of every case submitted to our judgment." Walker v. Commonwealth, 144 Va. 648, 652, 131 S.E. 230, 231 (1926). Code § 8.01-678 thus makes "harmless-error review required in all cases." Ferguson v. Commonwealth, 240 Va. ix, ix, 396 S.E.2d 675, 675 (1990) (text in Code citation parenthetical).

A criminal defendant, after all, "'is entitled to a fair trial but not a perfect one,' for there are no perfect trials." Kirby v. Commonwealth, 50 Va. App. 691, 698, 653 S.E.2d 600, 603 (2007) (quoting Brown v. United States, 411 U.S. 223, 231-32 (1973)). It is "the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless lest they retreat from their responsibility, becoming instead impregnable citadels of technicality." Id. at 699, 653 S.E.2d at 604 (internal quotation marks omitted). "The harmless error check on judicial power has never been a begrudged limitation, but rather one 'favored' by Virginia courts, because it grows out of the 'imperative demands of common sense,' and consequently has been 'deeply embedded in our jurisprudence.'" Id. (citations omitted).

Nonconstitutional error is harmless if, "when all is said and done," we can say with confidence that the alleged error "did not influence" the factfinder or "had but very slight effect"

---

"[t]he final test is whether the documents sought to be introduced are the type of records which are relied upon by those who prepare them or for whom they are prepared." Smith, 280 Va. at 184, 694 S.E.2d at 580 (quoting McDowell, 273 Va. at 435, 641 S.E.2d at 509).

on the final decision. Id. at 698, 653 S.E.2d at 604 (quoting Rose v. Commonwealth, 270 Va. 3, 12, 613 S.E.2d 454, 458-59 (2005)). A conviction cannot stand if we "cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error" or if we are "left in grave doubt" about its influence. Id. (quoting Rose, 270 Va. at 12, 613 S.E.2d at 458-59). We focus our review on "a host of factors," including

> the importance of the witness[] testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness[es] on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

Hall v. Commonwealth, 32 Va. App. 616, 627-28, 529 S.E.2d 829, 835 (2000) (*en banc*).

Applying that standard, we agree with Jenkins that the trial court's erroneous admission of the eBay and PayPal account statements during the testimony of Shipman cannot be deemed harmless error. The fraudulent eBay account statement (showing multiple sales of new phones like those stolen from Sound Communications) links to the fraudulent PayPal account statement (showing the proceeds from these sales) which, in turn, links directly to the checking account owned by Jenkins (showing his receipt of the sale proceeds). As the prosecutor argued at trial, these records — viewed together — show an ongoing scheme by Jenkins to sell phones under a fictitious identity and to personally benefit from the revenue from those sales.

For these reasons, the objected-to evidence persuasively closed the loop on Shipman's testimony and erased any lingering doubt as to the inculpatory inferences that could be drawn from the circumstantial evidence implicating Jenkins. Given the strength of the erroneously admitted evidence, coupled with the trial court's mention of it while delivering its decision, we cannot say "with fair assurance" that the error "did not influence" the factfinder or had "but very slight effect" on the final decision. Kirby, 50 Va. App. at 698, 653 S.E.2d at 604 (internal

quotation marks omitted). Nor can we hold that the "other evidence of guilt is so overwhelming and the error so insignificant by comparison that the error could not have affected the verdict." Lebron v. Commonwealth, 58 Va. App. 540, 551, 712 S.E.2d 15, 20 (2011) (internal quotation marks omitted).

In a criminal case, when an appellate court reverses a trial court on an evidentiary issue, the proper remedy on appeal is to reverse the conviction and remand the case for retrial if the Commonwealth is so advised. See Code § 19.2-324.1; Evans v. Commonwealth, 228 Va. 468, 480, 323 S.E.2d 114, 121 (1984) (holding retrial permitted when a conviction is "annulled merely because the judicial process was defective, that is, evidence was received that should not have been offered").[5] If the case is retried, any relevant evidence previously admitted erroneously may be readmitted if done so properly. See, e.g., Meade v. Belcher, 212 Va. 796, 801, 188 S.E.2d 211, 215 (1972) (noting that a previously erroneously admitted photograph would be admissible upon retrial of the case so long as sufficient authenticating evidence for the photograph were produced).[6]

---

[5] On brief, Jenkins argues that the "Commonwealth's evidence, absent the Pay Pal and eBay records, established at best that the inventory system at the Company was poorly run." Appellant's Br. at 14. It is unclear whether Jenkins intends this assertion to be an indirect attack on the sufficiency of the evidence. If so, however, we will not consider it. No assignment of error specifically addresses sufficiency, see McEachern v. Commonwealth, 52 Va. App. 679, 683, 667 S.E.2d 343, 344 (2008) ("Under Rule 5A:12(c), only questions presented in the petition for appeal will be noticed by the Court of Appeals." (internal quotation marks omitted)), and, in any event, we must consider *all* the evidence (not just the properly admitted evidence) when addressing sufficiency on appeal, see Code § 19.2-324.1 (abrogating Rushing v. Commonwealth, 284 Va. 270, 726 S.E.2d 333 (2012)); accord 2013 Op. Va. Att'y Gen. 13-051, 2013 Va. AG LEXIS 69 (Aug. 16, 2013).

[6] See generally Burks v. United States, 437 U.S. 1, 15 (1978) ("[R]eversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, *e.g.*, incorrect receipt or rejection of evidence . . . . When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished."); see also United States v. Difrancesco, 449 U.S. 117, 151

III.

The trial court erred by admitting the eBay and PayPal account statements without the proper authentication and foundation. Because the error was not harmless, we reverse the embezzlement convictions and remand for retrial if the Commonwealth is so advised.

<u>Reversed and remanded.</u>

n.12 (1980) ("The reason for allowing retrials following reversal of convictions rests on a legitimate concern for the sound administration of justice. Corresponding to the right of an accused to be given a fair trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction." (internal quotation marks omitted)).